# MILLS ET AL. *v.* ELECTRIC AUTO-LITE CO. ET AL.

No. 64.   Argued November 13, 1969—Decided January 20, 1970

*Arnold I. Shure* argued the cause for petitioners. With him on the briefs were *Robert A. Sprecher, Edward N. Gadsby,* and *Mozart G. Ratner.*

*Albert E. Jenner, Jr.,* argued the cause for respondents. With him on the brief were *Jerold S. Solovy* and *John G. Stifler.*

*Solicitor General Griswold, Lawrence G. Wallace, Philip A. Loomis, Jr., David Ferber,* and *Meyer Eisenberg* filed a brief for the United States as *amicus curiae.*

MR. JUSTICE HARLAN delivered the opinion of the Court.

This case requires us to consider a basic aspect of the implied private right of action for violation of § 14 (a) of the Securities Exchange Act of 1934,[1] recognized by this Court in *J. I. Case Co.* v. *Borak,* 377 U. S. 426 (1964). As in *Borak* the asserted wrong is that a corporate merger was accomplished through the use of a proxy statement that was materially false or misleading. The question with which we deal is what causal relationship must be shown between such a statement and the merger to establish a cause of action based on the violation of the Act.

I

Petitioners were shareholders of the Electric Auto-Lite Company until 1963, when it was merged into Mergenthaler Linotype Company. They brought suit on the day before the shareholders' meeting at which the vote was to take place on the merger, against Auto-Lite, Mergenthaler, and a third company, American Manufacturing Company, Inc. The complaint sought an injunction against the voting by Auto-Lite's management of all proxies obtained by means of an allegedly misleading proxy solicitation; however, it did not seek a temporary restraining order, and the voting went ahead as scheduled the following day. Several months later

---

[1] 48 Stat. 895, as amended, 15 U. S. C. § 78n (a).

petitioners filed an amended complaint, seeking to have the merger set aside and to obtain such other relief as might be proper.

In Count II of the amended complaint, which is the only count before us,[2] petitioners predicated jurisdiction on § 27 of the 1934 Act, 15 U. S. C. § 78aa. They alleged that the proxy statement sent out by the Auto-Lite management to solicit shareholders' votes in favor of the merger was misleading, in violation of § 14 (a) of the Act and SEC Rule 14a–9 thereunder. (17 CFR § 240.14a–9.) Petitioners recited that before the merger Merganthaler owned over 50% of the outstanding shares of Auto-Lite common stock, and had been in control of Auto-Lite for two years. American Manufacturing in turn owned about one-third of the outstanding shares of Mergenthaler, and for two years had been in voting control of Mergenthaler and, through it, of Auto-Lite. Petitioners charged that in light of these circumstances the proxy statement was misleading in that it told Auto-Lite shareholders that their board of directors recommended approval of the merger without also informing them that all 11 of Auto-Lite's directors were nominees of Mergenthaler and were under the "control and domination of Mergenthaler." Petitioners asserted the right to complain of this alleged violation both derivatively on behalf of Auto-Lite and as representatives of the class of all its minority shareholders.

On petitioners' motion for summary judgment with respect to Count II, the District Court for the Northern District of Illinois ruled as a matter of law that the claimed defect in the proxy statement was, in light of the circumstances in which the statement was made, a material omission. The District Court concluded, from its reading of the *Borak* opinion, that it had to hold a hear-

---

[2] In the other two counts, petitioners alleged common-law fraud and that the merger was *ultra vires* under Ohio law.

ing on the issue whether there was "a causal connection between the finding that there has been a violation of the disclosure requirements of § 14 (a) and the alleged injury to the plaintiffs" before it could consider what remedies would be appropriate. (Unreported opinion dated February 14, 1966.)

After holding such a hearing, the court found that under the terms of the merger agreement, an affirmative vote of two-thirds of the Auto-Lite shares was required for approval of the merger, and that the respondent companies owned and controlled about 54% of the outstanding shares. Therefore, to obtain authorization of the merger, respondents had to secure the approval of a substantial number of the minority shareholders. At the stockholders' meeting, approximately 950,000 shares, out of· 1,160,000 shares outstanding, were voted in favor of the merger. This included 317,000 votes obtained by proxy from the minority shareholders, votes that were "necessary and indispensable to the approval of the merger." The District Court concluded that a causal relationship had thus been shown, and it granted an interlocutory judgment in favor of petitioners on the issue of liability, referring the case to a master for consideration of appropriate relief. (Unreported findings and conclusions dated Sept. 26, 1967; opinion reported at 281 F. Supp. 826 (1967)).

The District Court made the certification required by 28 U. S. C. § 1292 (b), and respondents took an interlocutory appeal to the Court of Appeals for the Seventh Circuit.[3] That court affirmed the District Court's con-

[3] Petitioners cross-appealed from an order entered by the District Court two days after its summary judgment in their favor, deleting from that judgment a conclusion of law that "[u]nder the provisions of Section 29 (b) of the Securities Exchange Act of 1934, the merger effectuated through a violation of Section 14 of the Act is void." This deletion was apparently made for the purpose of avoiding any prejudice on the question of relief, which remained open for con-

clusion that the proxy statement was materially deficient, but reversed on the question of causation. The court acknowledged that, if an injunction had been sought a sufficient time before the stockholders' meeting, "corrective measures would have been appropriate." 403 F. 2d 429, 435 (1968). However, since this suit was brought too late for preventive action, the courts had to determine "whether the misleading statement and omission caused the submission of sufficient proxies," as a prerequisite to a determination of liability under the Act. If the respondents could show, "by a preponderance of probabilities, that the merger would have received a sufficient vote even if the proxy statement had not been misleading in the respect found," petitioners would be entitled to no relief of any kind. *Id.,* at 436.

The Court of Appeals acknowledged that this test corresponds to the common-law fraud test of whether the injured party relied on the misrepresentation. However, rightly concluding that "[r]eliance by thousands of individuals, as here, can scarcely be inquired into" (*id.,* at 436 n. 10), the court ruled that the issue was to be determined by proof of the fairness of the terms of the merger. If respondents could show that the merger had merit and was fair to the minority shareholders, the trial court would be justified in concluding that a sufficient number of shareholders would have approved the merger had there been no deficiency in the proxy statement. In that case respondents would be entitled to a judgment in their favor.

Claiming that the Court of Appeals has construed this Court's decision in *Borak* in a manner that frustrates the statute's policy of enforcement through private litigation, the petitioners then sought review in this

sideration by the master. In light of its disposition of respondents' appeal, the Court of Appeals had no need to consider the cross-appeal.

Court. We granted certiorari, 394 U. S. 971 (1969), believing that resolution of this basic issue should be made at this stage of the litigation and not postponed until after a trial under the Court of Appeals' decision.[4]

## II

As we stressed in *Borak*, § 14 (a) stemmed from a congressional belief that "[f]air corporate suffrage is an important right that should attach to every equity security bought on a public exchange." H. R. Rep. No. 1383, 73d Cong., 2d Sess., 13. The provision was intended to promote "the free exercise of the voting rights of stockholders" by ensuring that proxies would be solicited with "explanation to the stockholder of the real nature of the questions for which authority to cast his vote is sought." *Id.*, at 14; S. Rep. No. 792, 73d Cong., 2d Sess., 12; see 377 U. S., at 431. The decision below, by permitting all liability to be foreclosed on the basis of a finding that the merger was fair, would allow the stockholders to be bypassed, at least where the only legal challenge to the merger is a suit for retrospective relief after the meeting has been held. A judicial appraisal of the merger's merits could be substituted for the actual and informed vote of the stockholders.

---

[4] Respondents ask this Court to review the conclusion of the lower courts that the proxy statement was misleading in a material respect. Petitioners naturally did not raise this question in their petition for certiorari, and respondents filed no cross-petition. Since reversal of the Court of Appeals' ruling on this question would not dictate affirmance of that court's judgment, which remanded the case for proceedings to determine causation, but rather elimination of petitioners' rights thereunder, we will not consider the question in these circumstances. *United States* v. *American Ry. Exp. Co.*, 265 U. S. 425, 435 (1924); *Langnes* v. *Green*, 282 U. S. 531, 535–539 (1931); *Morley Constr. Co.* v. *Maryland Cas. Co.*, 300 U. S. 185, 191–192 (1937); R. Stern & E. Gressman, Supreme Court Practice 314, 315 (4th ed. 1969).

The result would be to insulate from private redress an entire category of proxy violations—those relating to matters other than the terms of the merger. Even outrageous misrepresentations in a proxy solicitation, if they did not relate to the terms of the transaction, would give rise to no cause of action under § 14 (a). Particularly if carried over to enforcement actions by the Securities and Exchange Commission itself, such a result would subvert the congressional purpose of ensuring full and fair disclosure to shareholders.

Further, recognition of the fairness of the merger as a complete defense would confront small shareholders with an additional obstacle to making a successful challenge to a proposal recommended through a defective proxy statement. The risk that they would be unable to rebut the corporation's evidence of the fairness of the proposal, and thus to establish their cause of action, would be bound to discourage such shareholders from the private enforcement of the proxy rules that "provides a necessary supplement to Commission action." *J. I. Case Co.* v. *Borak*, 377 U. S., at 432.[5]

---

[5] The Court of Appeals' ruling that "causation" may be negated by proof of the fairness of the merger also rests on a dubious behavioral assumption. There is no justification for presuming that the shareholders of every corporation are willing to accept any and every fair merger offer put before them; yet such a presumption is implicit in the opinion of the Court of Appeals. That court gave no indication of what evidence petitioners might adduce, once respondents had established that the merger proposal was equitable, in order to show that the shareholders would nevertheless have rejected it if the solicitation had not been misleading. Proof of actual reliance by thousands of individuals would, as the court acknowledged, not be feasible, see R. Jennings & H. Marsh, Securities Regulation, Cases and Materials 1001 (2d ed. 1968); and reliance on the *nondisclosure* of a fact is a particularly difficult matter to define or prove, see 3 L. Loss, Securities Regulation 1766 (2d ed. 1961). In practice, therefore, the objective fairness of the proposal

Such a frustration of the congressional policy is not required by anything in the wording of the statute or in our opinion in the *Borak* case. Section 14 (a) declares it "unlawful" to solicit proxies in contravention of Commission rules, and SEC Rule 14a–9 prohibits solicitations "containing any statement which . . . is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading . . . ." Use of a solicitation that is materially misleading is itself a violation of law, as the Court of Appeals recognized in stating that injunctive relief would be available to remedy such a defect if sought prior to the stockholders' meeting. In *Borak,* which came to this Court on a dismissal of the complaint, the Court limited its inquiry to whether a violation of § 14 (a) gives rise to "a federal cause of action for rescission or damages," 377 U. S., at 428. Referring to the argument made by petitioners there "that the merger can be dissolved only if it was fraudulent or non-beneficial, issues upon which the proxy material would not bear," the Court stated: "But the causal relationship of the proxy material and the merger are questions of fact to be resolved at trial, not here. We therefore do not discuss this point further." *Id.,* at 431. In the present case there has been a hearing specifically directed to the causation problem. The question before the Court is whether the facts found on the basis of that hearing are sufficient in law to establish petitioners' cause of action, and we conclude that they are.

would seemingly be determinative of liability. But, in view of the many other factors that might lead shareholders to prefer their current position to that of owners of a larger, combined enterprise, it is pure conjecture to assume that the fairness of the proposal will always be determinative of their vote. Cf. *Wirtz* v. *Hotel, Motel & Club Employees Union,* 391 U. S. 492, 508 (1968).

Where the misstatement or omission in a proxy statement has been shown to be "material," as it was found to be here, that determination itself indubitably embodies a conclusion that the defect was of such a character that it might have been considered important by a reasonable shareholder who was in the process of deciding how to vote.[6] This requirement that the defect have a significant *propensity* to affect the voting process is found in the express terms of Rule 14a–9, and it adequately serves the purpose of ensuring that a cause of action cannot be established by proof of a defect so trivial, or so unrelated to the transaction for which approval is sought, that correction of the defect or imposition of liability would not further the interests protected by § 14 (a).

There is no need to supplement this requirement, as did the Court of Appeals, with a requirement of proof

---

[6] Cf. *List* v. *Fashion Park, Inc.*, 340 F. 2d 457, 462 (C. A. 2d Cir. 1965); *General Time Corp.* v. *Talley Industries, Inc.*, 403 F. 2d 159, 162 (C. A. 2d Cir. 1968); Restatement (Second) of Torts § 538 (2)(a) (Tent. Draft No. 10, 1964); 2 L. Loss, Securities Regulation 917 (2d ed. 1961); 6 *id.*, at 3534 (Supp. 1969).

In this case, where the misleading aspect of the solicitation involved failure to reveal a serious conflict of interest on the part of the directors, the Court of Appeals concluded that the crucial question in determining materiality was "whether the minority shareholders were sufficiently alerted to the board's relationship to their adversary to be on their guard." 403 F. 2d, at 434. An adequate disclosure of this relationship would have warned the stockholders to give more careful scrutiny to the terms of the merger than they might to one recommended by an entirely disinterested board. Thus, the failure to make such a disclosure was found to be a material defect "as a matter of law," thwarting the informed decision at which the statute aims, regardless of whether the terms of the merger were such that a reasonable stockholder would have approved the transaction after more careful analysis. See also *Swanson* v. *American Consumer Industries, Inc.*, 415 F. 2d 1326 (C. A. 7th Cir. 1969).

of whether the defect actually had a decisive effect on the voting. Where there has been a finding of materiality, a shareholder has made a sufficient showing of causal relationship between the violation and the injury for which he seeks redress if, as here, he proves that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction. This objective test will avoid the impracticalities of determining how many votes were affected, and, by resolving doubts in favor of those the statute is designed to protect, will effectuate the congressional policy of ensuring that the shareholders are able to make an informed choice when they are consulted on corporate transactions. Cf. *Union Pac. R. Co.* v. *Chicago & N. W. R. Co.*, 226 F. Supp. 400, 411 (D. C. N. D. Ill. 1964); 2 L. Loss, Securities Regulation 962 n. 411 (2d ed. 1961); 5 *id.*, at 2929-2930 (Supp. 1969).[7]

---

[7] We need not decide in this case whether causation could be shown where the management controls a sufficient number of shares to approve the transaction without any votes from the minority. Even in that situation, if the management finds it necessary for legal or practical reasons to solicit proxies from minority shareholders, at least one court has held that the proxy solicitation might be sufficiently related to the merger to satisfy the causation requirement, see *Laurenzano* v. *Einbender*, 264 F. Supp. 356 (D. C. E. D. N. Y. 1966); cf. *Swanson* v. *American Consumer Industries, Inc.*, 415 F. 2d 1326, 1331-1332 (C. A. 7th Cir. 1969); *Eagle* v. *Horvath*, 241 F. Supp. 341, 344 (D. C. S. D. N. Y. 1965); *Globus, Inc.* v. *Jaroff*, 271 F. Supp. 378, 381 (D. C. S. D. N. Y. 1967); Comment, Shareholders' Derivative Suit to Enforce a Corporate Right of Action Against Directors Under SEC Rule 10b-5, 114 U. Pa. L. Rev. 578, 582 (1966). But see *Hoover* v. *Allen*, 241 F. Supp. 213, 231-232 (D. C. S. D. N. Y. 1965); *Barnett* v. *Anaconda Co.*, 238 F. Supp. 766, 770-774 (D. C. S. D. N. Y. 1965); *Robbins* v. *Banner Industries, Inc.*, 285 F. Supp. 758, 762-763 (D. C. S. D. N. Y. 1966). See generally 5 L. Loss, Securities Regulation 2933-2938 (Supp. 1969).

## III

Our conclusion that petitioners have established their case by showing that proxies necessary to approval of the merger were obtained by means of a materially misleading solicitation implies nothing about the form of relief to which they may be entitled. We held in *Borak* that upon finding a violation the courts were "to be alert to provide such remedies as are necessary to make effective the congressional purpose," noting specifically that such remedies are not to be limited to prospective relief. 377 U. S., at 433, 434. In devising retrospective relief for violation of the proxy rules, the federal courts should consider the same factors that would govern the relief granted for any similar illegality or fraud. One important factor may be the fairness of the terms of the merger. Possible forms of relief will include setting aside the merger or granting other equitable relief, but, as the Court of Appeals below noted, nothing in the statutory policy "requires the court to unscramble a corporate transaction merely because a violation occurred." 403 F. 2d, at 436. In selecting a remedy the lower courts should exercise " 'the sound discretion which guides the determinations of courts of equity,' " keeping in mind the role of equity as "the instrument for nice adjustment and reconciliation between the public interest and private needs as well as between competing private claims." *Hecht Co.* v. *Bowles,* 321 U. S. 321, 329–330 (1944), quoting from *Meredith* v. *Winter Haven,* 320 U. S. 228, 235 (1943).

We do not read § 29 (b) of the Act,[8] which declares contracts made in violation of the Act or a rule there-

---

[8] Section 29 (b) provides in pertinent part: "Every contract made in violation of any provision of this chapter or of any rule or regulation thereunder . . . shall be void (1) as regards the rights of any person who, in violation of any such provision, rule, or regulation,

under "void . . . as regards the rights of" the violator and knowing successors in interest, as requiring that the merger be set aside simply because the merger agreement is a "void" contract. This language establishes that the guilty party is precluded from enforcing the contract against an unwilling innocent party,[9] but it does not compel the conclusion that the contract is a nullity, creating no enforceable rights even in a party innocent of the violation. The lower federal courts have read § 29 (b), which has counterparts in the Holding Company Act, the Investment Company Act, and the Investment Advisers Act,[10] as rendering the contract merely voidable at the option of the innocent party. See, *e. g.*, *Greater Iowa Corp.* v. *McLendon*, 378 F. 2d 783, 792 (C. A. 8th Cir. 1967); *Royal Air Properties, Inc.* v. *Smith*, 312 F. 2d 210, 213 (C. A. 9th Cir. 1962); *Bankers Life & Cas. Co.* v. *Bellanca Corp.*, 288 F. 2d 784, 787 (C. A. 7th Cir. 1961); *Kaminsky* v. *Abrams*, 281 F. Supp. 501, 507 (D. C. S. D. N. Y. 1968); *Maher* v. *J. R. Williston & Beane, Inc.*, 280 F. Supp. 133, 138–139 (D. C. S. D. N. Y. 1967); cf. *Green* v. *Brown*, 276 F. Supp. 753, 757 (D. C. S. D. N. Y. 1967), remanded on other grounds, 398 F. 2d 1006 (C. A. 2d Cir. 1968) (Investment Company Act). See also 5 Loss, *supra*,

---

shall have made . . . any such contract, and (2) as regards the rights of any person who, not being a party to such contract, shall have acquired any right thereunder with actual knowledge of the facts by reason of which the making . . . of such contract was in violation of any such provision, rule, or regulation . . . ." 15 U. S. C. § 78cc (b).

[9] See *Eastside Church of Christ* v. *National Plan, Inc.*, 391 F. 2d 357, 362–363 (C. A. 5th Cir. 1968); cf. *Goldstein* v. *Groesbeck*, 142 F. 2d 422, 426–427 (C. A. 2d Cir. 1944).

[10] See Public Utility Holding Company Act of 1935, § 26 (b), 49 Stat. 836, 15 U. S. C. § 79z (b); Investment Company Act of 1940, § 47 (b), 54 Stat. 846, 15 U. S. C. § 80a–46 (b); Investment Advisers Act of 1940, § 215 (b), 54 Stat. 856, 15 U. S. C. § 80b–15 (b).

at 2925–2926 (Supp. 1969); 6 *id.,* at 3866. This interpretation is eminently sensible. The interests of the victim are sufficiently protected by giving him the right to rescind; to regard the contract as void where he has not invoked that right would only create the possibility of hardships to him or others without necessarily advancing the statutory policy of disclosure.

The United States, as *amicus curiae,* points out that as representatives of the minority shareholders, petitioners are not parties to the merger agreement and thus do not enjoy a statutory right under § 29 (b) to set it aside.[11] Furthermore, while they do have a derivative right to invoke Auto-Lite's status as a party to the agreement, a determination of what relief should be granted in Auto-Lite's name must hinge on whether setting aside the merger would be in the best interests of the shareholders as a whole. In short, in the context of a suit such as this one, § 29 (b) leaves the matter of relief where it would be under *Borak* without specific statutory language—the merger should be set aside only if a court of equity concludes, from all the circumstances, that it would be equitable to do so. Cf. *SEC* v. *National Securities, Inc.,* 393 U. S. 453, 456, 463–464 (1969).

Monetary relief will, of course, also be a possibility. Where the defect in the proxy solicitation relates to the specific terms of the merger, the district court might appropriately order an accounting to ensure that the shareholders receive the value that was represented as coming to them. On the other hand, where, as here, the

---

[11] If petitioners had submitted their own proxies in favor of the merger in response to the unlawful solicitation, as it does not appear they did, the language of § 29 (b) would seem to give them, as innocent parties to that transaction, a right to rescind their proxies. But it is clear in this case, where petitioners' combined holdings are only 600 shares, that such rescission would not affect the authorization of the merger.

misleading aspect of the solicitation did not relate to terms of the merger, monetary relief might be afforded to the shareholders only if the merger resulted in a reduction of the earnings or earnings potential of their holdings. In short, damages should be recoverable only to the extent that they can be shown. If commingling of the assets and operations of the merged companies makes it impossible to establish direct injury from the merger, relief might be predicated on a determination of the fairness of the terms of the merger at the time it was approved. These questions, of course, are for decision in the first instance by the District Court on remand, and our singling out of some of the possibilities is not intended to exclude others.

## IV

Although the question of relief must await further proceedings in the District Court, our conclusion that petitioners have established their cause of action indicates that the Court of Appeals should have affirmed the partial summary judgment on the issue of liability.[12] The result would have been not only that respondents, rather than petitioners, would have borne the costs of the appeal, but also, we think, that petitioners would have been entitled to an interim award of litigation expenses and reasonable attorneys' fees. Cf. *Highway Truck Drivers Local 107* v. *Cohen,* 220 F. Supp. 735 (D. C. E. D. Pa. 1963). We agree with the position taken by petitioners, and by the United States as *amicus,* that petitioners, who have established a violation of the securities laws by their corporation and its officials,

---

[12] The Court of Appeals might have modified the judgment of the District Court to the extent that it referred the issue of relief to a master under Fed. Rule Civ. Proc. 53 (b). The Court of Appeals' opinion indicates doubt whether the referral was appropriate, 403 F. 2d, at 436. This issue is not before us.

should be reimbursed by the corporation or its survivor for the costs of establishing the violation.[13]

The absence of express statutory authorization for an award of attorneys' fees in a suit under § 14 (a) does not preclude such an award in cases of this type. In a suit by stockholders to recover short-swing profits for their corporation under § 16 (b) of the 1934 Act, the Court of Appeals for the Second Circuit has awarded attorneys' fees despite the lack of any provision for them in § 16 (b), "on the theory that the corporation which has received the benefit of the attorney's services should pay the reasonable value thereof." *Smolowe* v. *Delendo Corp.*, 136 F. 2d 231, 241 (C. A. 2d Cir. 1943). The court held that Congress' inclusion in §§ 9 (e) and 18 (a) of the Act of express provisions for recovery of attorneys' fees in certain other types of suits [14] "does not impinge [upon] the result we reach in the absence of statute, for those sections merely enforce an additional penalty against the wrongdoer." *Ibid.*

We agree with the Second Circuit that the specific provisions in §§ 9 (e) and 18 (a) should not be read as denying to the courts the power to award counsel fees

---

[13] We believe that the question of reimbursement for these expenses has a sufficiently close relationship to the determination of what constitutes a cause of action under § 14 (a) that it is appropriate for decision at this time. The United States urges the Court to consider also whether petitioners will be entitled to recoup expenses reasonably incurred in further litigation on the question of relief. We are urged to hold that such expenses should be reimbursed regardless of whether petitioners are ultimately successful in obtaining significant relief. However, the question of reimbursement for future expenses should be resolved in the first instance by the lower courts after the issue of relief has been litigated and a record has been established concerning the need for a further award. We express no view on the matter at this juncture.

[14] These provisions deal, respectively, with manipulation of security prices and with misleading statements in documents filed with the Commission. See 15 U. S. C. §§ 78i (e), 78r (a).

in suits under other sections of the Act when circumstances make such an award appropriate, any more than the express creation by those sections of private liabilities negates the possibility of an implied right of action under § 14 (a). The remedial provisions of the 1934 Act are far different from those of the Lanham Act, § 35, 60 Stat. 439, 15 U. S. C. § 1117, which have been held to preclude an award of attorneys' fees in a suit for trademark infringement. *Fleischmann Corp.* v. *Maier Brewing Co.,* 386 U. S. 714 (1967). Since Congress in the Lanham Act had "meticulously detailed the remedies available to a plaintiff who proves that his valid trademark has been infringed," the Court in *Fleischmann* concluded that the express remedial provisions were intended "to mark the boundaries of the power to award monetary relief in cases arising under the Act." 386 U. S., at 719, 721. By contrast, we cannot fairly infer from the Securities Exchange Act of 1934 a purpose to circumscribe the courts' power to grant appropriate remedies. Cf. *Bakery Workers Union* v. *Ratner,* 118 U. S. App. D. C. 269, 274–275, 335 F. 2d 691, 696–697 (1964). The Act makes no provision for private recovery for a violation of § 14 (a), other than the declaration of "voidness" in § 29 (b), leaving the courts with the task, faced by this Court in *Borak,* of deciding whether a private right of action should be implied. The courts must similarly determine whether the special circumstances exist that would justify an award of attorneys' fees, including reasonable expenses of litigation other than statutory costs.[15]

While the general American rule is that attorneys' fees are not ordinarily recoverable as costs, both the courts and Congress have developed exceptions to this rule for situations in which overriding considerations

---

[15] Cf. Note, Attorney's Fees: Where Shall the Ultimate Burden Lie?, 20 Vand. L. Rev. 1216, 1229 and n. 68 (1967).

indicate the need for such a recovery.[16]  A primary judge-created exception has been to award expenses where a plaintiff has successfully maintained a suit, usually on behalf of a class, that benefits a group of others in the same manner as himself. See *Fleischmann Corp.* v. *Maier Brewing Co.*, 386 U. S., at 718–719.  To allow the others to obtain full benefit from the plaintiff's efforts without contributing equally to the litigation expenses would be to enrich the others unjustly at the plaintiff's expense.  This suit presents such a situation.  The dissemination of misleading proxy solicitations was a "deceit practiced on the stockholders as a group," *J. I. Case Co.* v. *Borak*, 377 U. S., at 432, and the expenses of petitioners' lawsuit have been incurred for the benefit of the corporation and the other shareholders.

The fact that this suit has not yet produced, and may never produce, a monetary recovery from which the fees could be paid does not preclude an award based on this rationale.  Although the earliest cases recognizing a right to reimbursement involved litigation that had produced or preserved a "common fund" for the benefit of a group, nothing in these cases indicates that the suit must actually bring money into the court as a prerequisite to the court's power to order reimbursement of expenses.[17]  "[T]he foundation for the historic

---

[16] Many commentators have argued for a more thoroughgoing abandonment of the rule. See, *e. g.*, Ehrenzweig, Reimbursement of Counsel Fees and the Great Society, 54 Calif. L. Rev. 792 (1966); Kuenzel, The Attorney's Fee: Why Not a Cost of Litigation? 49 Iowa L. Rev. 75 (1963); McCormick, Counsel Fees and Other Expenses of Litigation as an Element of Damages, 15 Minn. L. Rev. 619 (1931); Stoebuck, Counsel Fees Included in Costs: A Logical Development, 38 U. Colo. L. Rev. 202 (1966); Note, *supra*, n. 15.

[17] See *Trustees* v. *Greenough*, 105 U. S. 527, 531–537 (1882); *Central R. R. & Banking Co.* v. *Pettus*, 113 U. S. 116 (1885);

practice of granting reimbursement for the costs of litigation other than the conventional taxable costs is part of the original authority of the chancellor to do equity in a particular situation." *Sprague* v. *Ticonic Nat. Bank,* 307 U. S. 161, 166 (1939). This Court in *Sprague* upheld the District Court's power to grant reimbursement for a plaintiff's litigation expenses even though she had sued only on her own behalf and not for a class, because her success would have a *stare decisis* effect entitling others to recover out of specific assets of the same defendant. Although those others were not parties before the court, they could be forced to contribute to the costs of the suit by an order reimbursing the plaintiff from the defendant's assets out of which their recoveries later would have to come. The Court observed that "the absence of an avowed class suit or the creation of a fund, as it were, through *stare decisis* rather than through a decree— hardly touch[es] the power of equity in doing justice as between a party and the beneficiaries of his litigation." *Id.,* at 167.

Other cases have departed further from the traditional metes and bounds of the doctrine, to permit reimbursement in cases where the litigation has conferred a sub-

---

Hornstein, The Counsel Fee in Stockholder's Derivative Suits, 39 Col. L. Rev. 784 (1939).

Even in the original "fund" case in this Court, it was recognized that the power of equity to award fees was not restricted to the court's ability to provide reimbursement from the fund itself: "It would be very hard on [the successful plaintiff] to turn him away without any allowance . . . . It would not only be unjust to him, but it would give to the other parties entitled to participate in the benefits of the fund an unfair advantage. He has worked for them as well as for himself; and if he cannot be reimbursed out of the fund itself, they ought to contribute their due proportion of the expenses which he has fairly incurred. To make them a charge upon the fund is the most equitable way of securing such contribution." *Trustees* v. *Greenough,* 105 U. S., at 532.

stantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them. This development has been most pronounced in shareholders' derivative actions, where the courts increasingly have recognized that the expenses incurred by one shareholder in the vindication of a corporate right of action can be spread among all shareholders through an award against the corporation, regardless of whether an actual money recovery has been obtained in the corporation's favor.[18] For example, awards have been sustained in suits by stockholders complaining that shares of their corporation had been issued wrongfully for an inadequate consideration.[19] A successful suit of this type, resulting in cancellation of the shares, does not bring a fund into court or add to the assets of the corporation, but it does benefit the holders of the remaining shares by enhancing their value. Similarly, holders of voting trust certificates have been allowed reimbursement of their expenses from the corporation where they succeeded in terminating the voting trust and obtaining for all certificate holders the right to vote their shares.[20] In these cases there

[18] See, *e. g., Holthusen* v. *Edward G. Budd Mfg. Co.*, 55 F. Supp. 945 (D. C. E. D. Pa. 1944); *Runswick* v. *Floor*, 116 Utah 91, 208 P. 2d 948 (1949); cases cited n. 22, *infra.* See generally Hornstein, Legal Therapeutics: The "Salvage" Factor in Counsel Fee Awards, 69 Harv. L. Rev. 658, 669–679 (1956); Smith, Recovery of Plaintiff's Attorney's Fees in Corporate Litigation, 40 L. A. Bar Bull. 15 (1964).

[19] *Hartman* v. *Oatman Gold Mining & Milling Co.*, 22 Ariz. 476, 198 P. 717 (1921); *Greenough* v. *Coeur D'Alenes Lead Co.*, 52 Idaho 599, 18 P. 2d 288 (1932); cf. *Riverside Oil & Refining Co.* v. *Lynch*, 114 Okla. 198, 243 P. 967 (1925).

[20] *Allen* v. *Chase Nat. Bank*, 180 Misc. 259, 40 N. Y. S. 2d 245 (Sup. Ct. 1943), sequel to *Allen* v. *Chase Nat. Bank*, 178 Misc. 536, 35 N. Y. S. 2d 958 (Sup. Ct. 1942).

was a "common fund" only in the sense that the court's jurisdiction over the corporation as nominal defendant made it possible to assess fees against all of the shareholders through an award against the corporation.[21]

In many of these instances the benefit conferred is capable of expression in monetary terms, if only by estimating the increase in market value of the shares attributable to the successful litigation. However, an increasing number of lower courts have acknowledged that a corporation may receive a "substantial benefit" from a derivative suit, justifying an award of counsel fees, regardless of whether the benefit is pecuniary in nature.[22] A leading case is *Bosch* v. *Meeker Cooperative Light & Power Assn.*, 257 Minn. 362, 101 N. W. 2d 423 (1960), in which a stockholder was reimbursed for his expenses in obtaining a judicial declaration that the

---

[21] Cf. Note, Allowance of Counsel Fees Out of a "Fund in Court": The New Jersey Experience, 17 Rutgers L. Rev. 634, 638–643 (1963).

[22] See *Schechtman* v. *Wolfson*, 244 F. 2d 537, 540 (C. A. 2d Cir. 1957); *Grant* v. *Hartman Ranch Co.*, 193 Cal. App. 2d 497, 14 Cal. Rptr. 531 (1961); *Treves* v. *Servel, Inc.*, 38 Del. Ch. 483, 154 A. 2d 188 (Del. Sup. Ct. 1959); *Saks* v. *Gamble*, 38 Del. Ch. 504, 154 A. 2d 767 (1958); *Yap* v. *Wah Yen Ki Tuk Tsen Nin Hue,* 43 Haw. 37, 42 (1958); *Berger* v. *Amana Society,* 253 Iowa 378, 387, 111 N. W. 2d 753, 758 (1962); *Bosch* v. *Meeker Cooperative Light & Power Assn.,* 257 Minn. 362, 101 N. W. 2d 423 (1960); *Eisenberg* v. *Central Zone Property Corp.,* 1 App. Div. 2d 353, 149 N. Y. S. 2d 840 (Sup. Ct. 1956), aff'd *per curiam,* 3 N. Y. 2d 729, 143 N. E. 2d 516 (1957); *Martin Foundation* v. *Phillip-Jones Corp.,* 283 App. Div. 729, 127 N. Y. S. 2d 649 (Sup. Ct. 1954); *Abrams* v. *Textile Realty Corp.,* 197 Misc. 25, 93 N. Y. S. 2d 808 (Sup. Ct. 1949); 97 N. Y. S. 2d 492 (op. of Referee); *Long Park, Inc.* v. *Trenton-New Brunswick Theatres Co.,* 274 App. Div. 988, 84 N. Y. S. 2d 482 (Sup. Ct. 1948), aff'd *per curiam,* 299 N. Y. 718, 87 N. E. 2d 126 (1949); Smith, *supra,* n. 18; Shareholder Suits: Pecuniary Benefit Unnecessary for Counsel Fee Award, 13 Stan. L. Rev. 146 (1960).

election of certain of the corporation's directors was invalid. The Supreme Court of Minnesota stated:

> "Where an action by a stockholder results in a substantial benefit to a corporation he should recover his costs and expenses. . . . [A] substantial benefit must be something more than technical in its consequence and be one that accomplishes a result which corrects or prevents an abuse which would be prejudicial to the rights and interests of the corporation or affect the enjoyment or protection of an essential right to the stockholder's interest." *Id.,* at 366–367, 101 N. W. 2d, at 426–427.

In many suits under § 14 (a), particularly where the violation does not relate to the terms of the transaction for which proxies are solicited, it may be impossible to assign monetary value to the benefit. Nevertheless, the stress placed by Congress on the importance of fair and informed corporate suffrage leads to the conclusion that, in vindicating the statutory policy, petitioners have rendered a substantial service to the corporation and its shareholders. Cf. *Bakery Workers Union* v. *Ratner,* 118 U. S. App. D. C. 269, 274, 335 F. 2d 691, 696 (1964). Whether petitioners are successful in showing a need for significant relief may be a factor in determining whether a further award should later be made. But regardless of the relief granted, private stockholders' actions of this sort "involve corporate therapeutics," [23] and furnish a benefit to all shareholders by providing an important means of enforcement of the proxy statute.[24] To award attorneys' fees in such a suit to a plaintiff who has succeeded in establishing a cause of action is not to saddle the unsuccessful party with the expenses but to impose

---

[23] *Murphy* v. *North American Light & Power Co.,* 33 F. Supp. 567, 570 (D. C. S. D. N. Y. 1940).

[24] Cf. Hornstein, *supra,* n. 18, at 659, 662–663.

them on the class that has benefited from them and that would have had to pay them had it brought the suit.

For the foregoing reasons we conclude that the judgment of the Court of Appeals should be vacated and the case remanded to that court for further proceedings consistent with this opinion.

*It is so ordered.*

MR. JUSTICE BLACK, concurring in part and dissenting in part.

I substantially agree with Parts II and III of the Court's opinion holding that these stockholders have sufficiently proved a violation of § 14 (a) of the Securities Exchange Act of 1934 and are thus entitled to recover whatever damages they have suffered as a result of the misleading corporate statements, or perhaps to an equitable setting aside of the merger itself. I do not agree, however, to what appears to be the holding in Part IV that stockholders who hire lawyers to prosecute their claims in such a case can recover attorneys' fees in the absence of a valid contractual agreement so providing or an explicit statute creating such a right of recovery. The courts are interpreters, not creators, of legal rights to recover and if there is a need for recovery of attorneys' fees to effectuate the policies of the Act here involved, that need should in my judgment be met by Congress, not by this Court.