516 F.2d 303
 Fed. Sec. L. Rep. P 95,015
Jeff SIMON, as Custodian for Gail Nina Simon under the New
York Uniform Gifts to Minors Act, Plaintiff-Appellant,
v.
The NEW HAVEN BOARD & CARTON COMPANY, INCORPORATED et al.,
Defendants-Appellees.
 No. 27, Docket 74-1272.
 United States Court of Appeals,
Second Circuit.
 Argued September 13, 1974.
Decided March 5, 1975.
 
 Herbert L. Scharf, New York City (Alfred Olonoff, Harold Bobroff and Bobroff, Olonoff & Scharf, New York City, on the brief), for plaintiff-appellant.
 William J. Doyle, New Haven, Conn. (J. Michael Eisner and Wiggin & Dana, New Haven, Conn., on the brief), for defendants-appellees, except William B. Gumbart.
 Louis M. Winer, New Haven, Conn. (Tyler, Cooper, Grant, Bowerman & Keefe, New Haven, Conn., on the brief), for defendant-appellee William B. Gumbart.
 Before KAUFMAN, Chief Judge, and SMITH and TIMBERS, Circuit Judges.
 TIMBERS, Circuit Judge:
 
 
 1
 On this appeal from a judgment entered January 9, 1974 after a seven day bench trial in the District of Connecticut, Jon O. Newman, District Judge, dismissing a stockholder's derivative action, the essential issue is the correctness of the district court's determination that the corporation had not been damaged. For the reasons below, we affirm.
 
 I.
 
 2
 In view of the district court's clear and comprehensive statement of the facts, --- F.Supp. ---, it is sufficient for our purpose briefly to summarize only those facts necessary to an understanding of our ruling on the essential issue before us.
 
 
 3
 The action in the district court was commenced April 24, 1964. It arose out of the merger earlier that year of several Florida companies into The New Haven Board & Carton Company (New Haven or the company). The Florida companies were owned by defendants Leon J. Simkins, Morton H. Simkins and Dorothy Simkins and their families (the Simkins). The Simkins were in effective control of New Haven. Leon J. Simkins was president of New Haven. The merger was accomplished by New Haven's issuance of 1,377,774 shares of its common stock to the shareholders of the Florida companies in exchange for all of the outstanding shares of the common and preferred stock of the Florida companies. On the exchange, New Haven stock was acquired at a price of $4.50 per share, pursuant to approval by the directors and stockholders of New Haven.
 
 
 4
 Defendants Edwin W. Miller, Sterling R. Chatfield and William B. Gumbart were directors of New Haven at the time of the merger. Plaintiff is the custodian of a minor who owned stock of New Haven.
 
 
 5
 The complaint set forth two causes of action: one, based on diversity jurisdiction, alleged that the three director-defendants had breached their fiduciary duties under Connecticut law (state law claim); the other alleged that all defendants had violated Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1970), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5 (1974) (10b-5 claim). Plaintiff's 10b-5 claim was based on alleged misrepresentations and omissions in the proxy statement and accompanying 1963 annual report which were mailed to stockholders of New Haven prior to the stockholders meeting that approved the merger on February 28, 1964.
 
 
 6
 Plaintiff's evidence at trial was directed chiefly at one challenged omission: the non-disclosure of an unaudited internal financial report for the first quarter of New Haven's 1964 fiscal year, the quarter ending December 31, 1963, which showed profits for that quarter of $148,590 prior to correction. Plaintiff claimed that disclosure of this information would have provided a basis for valuing the New Haven shares at the time of the merger at $8.621/2, rather than $4.50, per share, and therefore the company was damaged by the non-disclosure.
 
 
 7
 Plaintiff also claimed non-disclosure of other matters favorable to the company, including the contracted sale of New Haven's Grand Avenue property at a profit, the discounting of a New Haven note held by the Penn Mutual Life Insurance Company, and the valuation of New Haven's interest in the Grinnell Lithographic Company, Inc. in excess of that reported in the proxy material. Plaintiff claimed that, as of the merger date, these undisclosed assets and profits amounted to $2.055 per share not reflected in the merger price of $4.50 per share.
 
 
 8
 Plaintiff also claimed non-disclosure of facts said to entitle New Haven to a premium upon the sale of its stock which gave the purchaser control of the company.
 
 
 9
 At trial plaintiff abandoned his claim for rescission and limited his demand for relief to a claim for damages and an accounting. There was no evidence at trial that the company's ability to attract capital through public investment or institutional financing had been impaired as a result of the ratio at which the company's shares were exchanged upon the merger. As the district court aptly put it, "(T)he linchpin of the claim for damages is the alleged price of New Haven shares of $8.621/2, or any price above the merger price of $4.50. . . . . (P)laintiff is entitled to no judgment unless the company has been damaged by issuance of its shares at the $4.50 price."
 
 
 10
 Recognizing that this is the essential issue in the case, we turn directly to the district court's determination that the corporation was not damaged.
 
 II.
 
 11
 Our careful examination of the record satisfies us that there was substantial evidence to support the following essential findings of fact by the district court on the issue as stated.
 
 Price-Earnings Ratio
 
 12
 In seeking to establish at trial a value in excess of $4.50 per share for the New Haven stock, plaintiff relied chiefly on the unaudited report for the first quarter of the company's 1964 fiscal year.
 
 
 13
 The district court was not persuaded by plaintiff's expert in his attempt to project on the basis of a single quarter's earnings the earnings for a full year as a method of valuing stock according to a price-earnings ratio. The court found defendants' evidence more persuasive in establishing that New Haven stock was not undervalued at $4.50. Indeed, the court found that, if earnings were to be relied on at all as a basis for valuing the company's stock, New Haven's condition "was too risky . . . to justify an investment at a $4.50 price per share."
 
 
 14
 The court concluded that the evidence did not establish a value in excess of $4.50 per share for the shares issued to the Simkins and that disclosure of the unaudited quarterly report would have provided no basis for an increased value.
 
 Value of Control
 
 15
 Plaintiff established that the Simkins had paid an average of $4.64 per share for their New Haven stock in July 1963. He claimed that the merger price of $4.50 in 1964 therefore was too low, particularly since some elements of control were acquired in 1964.
 
 
 16
 The court found, however, that, while elements of control were acquired in both 1963 and 1964 by the Simkins, they actually acquired effective control of the corporation in 1963 when their purchases gave them ownership of approximately one-third of the outstanding shares and the right to elect a majority of the board of directors. The elements of control acquired in 1964 were worth a considerably smaller premium than the value of the control they had acquired in 1963. The court also noted that the July 1963 sale of stock to the Simkins was followed by continuing losses for the balance of fiscal 1963, and that these losses were reversed only by a modest profit during the first month of the first quarter of fiscal 1964.
 
 
 17
 The court concluded that the evidence on the value of control did not establish that $4.50 per share in January 1964 (when New Haven's directors approved the merger ratio) was not a fair price.Undisclosed Profits and Assets
 
 
 18
 Finally, the court noted plaintiff's claim "somewhat as an afterthought" that a price in excess of $4.50 per share was established by adding to the over-the-counter bid price of $4.50, the sum of $2.055 per share represented by undisclosed profits and assets not properly reflected in the proxy materials the so-called Grand Avenue, Penn Mutual and Grinnell matters.
 
 
 19
 As to this belated claim, the court found, first, that there was no evidence that the $4.50 price represented a market value to which other elements of value could be added, especially absent a showing that anyone other than the Simkins had any interest in purchasing New Haven shares at $4.50; and, second, that there was no basis for plaintiff's suggestion that a price per share in excess of $4.50 could be established by net asset values plus a per share increment to be derived from plaintiff's asserted undisclosed "profits and assets" of $2.055 per share.
 
 
 20
 The court concluded that plaintiff's attempt to establish a price per share in excess of $4.50 by adding a value reflecting such profits and losses must fail.
 
 
 21
 We hold that the foregoing findings of fact by the district court are not clearly erroneous, especially when due regard is given to the opportunity of the court to judge the credibility of witnesses; that they are supported by substantial evidence; and that they adequately justify the court's conclusion that plaintiff failed to prove that the corporation had been damaged by issuance of its shares at $4.50 per share.
 
 III.
 
 22
 We turn next to plaintiff's contention that his claim of damages should have been determined on the basis of certain "liberal principles relating to proof of damages", citing among other authorities Bigelow v. RKO Radio Pictures, Inc., 327 U.S. 251 (1946); Myzel v. Fields, 386 F.2d 718 (8 Cir. 1967), cert. denied, 390 U.S. 951 (1968); Janigan v. Taylor, 344 F.2d 781 (1 Cir.), cert. denied, 382 U.S. 879 (1965). We hold on the facts of the instant case that plaintiff's reliance on such authorities is misplaced.
 
 
 23
 The Bigelow rule that uncertainty as to the amount of damages is to be cast on a wrongdoer does not extend to uncertainty as to the fact of damages. 327 U.S. at 264-65. This is made clear by the Supreme Court's predicating its holding in Bigelow upon its earlier decision in Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 562 (1931), where it observed that "(T)here is a clear distinction between the measure of proof necessary to establish the fact that petitioner had sustained some damage, and the measure of proof necessary to enable the jury to fix the amount." (emphasis added).
 
 
 24
 Nor do Myzel or Janigan lead to a contrary result. To impose harsh penalties on one who might commit a mere technical violation of the securities laws (even if there were evidence of such a violation here, which there was not) to benefit one who has not been injured would not only be unjust, but would contravene Section 28 of the Securities Exchange Act of 1934, 15 U.S.C. § 78bb(a) (1970). We limit Myzel and Janigan to situations where there are present both elements described in Gerstle v. Gamble-Skogmo, Inc., 478 F.2d 1281, 1303-06 (2 Cir. 1973), namely (1) that a wrongdoer might be profiting by his own wrong, and (2) that, even if there were fraud, the defrauded party might have been in the position of earning the profits it seeks from the wrongdoer. With respect to element (1), there was no evidence whatsoever here that the alleged wrongdoers (the Simkins) might be profiting by their own wrongs. As for element (2), that could have been established here only if New Haven had had another prospective purchaser who would have paid more than $4.50 per share or if the Simkins would have paid more than $4.50 per share; but there was no such evidence in the instant case. We hold that Myzel and Janigan are completely inapplicable here.
 
 
 25
 We have considered plaintiff's other claims of error and find them to be without merit.[1]
 
 
 26
 Affirmed.
 
 
 
 [1]
 Among plaintiff's other claims of error that we find to be without merit is his claim that Mills v. Electric Auto-Lite Co., 396 U.S. 375 (1970), requires that attorneys' fees be awarded whenever a violation of the securities laws has been demonstrated even absent any evidence of damage. We are hard-pressed to discern how plaintiff succeeded in vindicating the shareholder interest in "fair and informed corporate suffrage," id. at 396, which was the basis of Mills. Plaintiff not only failed to establish his claim of damages, but, unlike Mills, he did not even request rescission of the merger and resubmission for a new vote. It can hardly be urged on the basis of the instant record that by instituting this litigation plaintiff rendered a benefit to New Haven shareholders which would justify award of attorney fees. Accordingly, we hold that Mills does not require such an award in this case. Cf. Isaacs Bros. Co. v. Hibernia Bank, 481 F.2d 1168, 1170 (9 Cir. 1973)