### In re The **PITTSBURGH AND LAKE ERIE RR CO. SECURITIES AND ANTITRUST LITIGATION.**
#### M.D.L. No. 134.

United States District Court,
E. D. Pennsylvania.
Dec. 6, 1974.

---

See also, D.C., 378 F.Supp. 441.

Thomas B. Rutter, Philadelphia, Pa., for A. E. Perlman.

Lewis H. VanDusen, Jr., Raymond K. Denworth, Jr., Philadelphia, Pa., for Paul A. Gorman.

Philip H. Strubing, Pepper Hamilton & Scheetz, Philadelphia, Pa., for Alan P. Kirby, W. Cordes Snyder, Jr., William P. Snyder, III.

Joseph N. Ewing, Robert W. Sayre, Saul, Ewing, Remick & Saul, Philadelphia, Pa., for Allison R. Maxwell, Jr.

Victor Wright, Fox, Rothschild, O'Brien & Frankel, Philadelphia, Pa., for Edward S. Bristol.

Frederick N. Egler, Egler, McGregor & Reinstadtler, Pittsburgh, Pa., for P & LE RR Co.

Gilbert J. Helwig, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for Henry G. Allyn, Jr., Robert W. Carroll, Gordon E. Neuenschwander, Willard F. Rockwell, Edwin Hodge, Jr., Andrew Van Pelt, C. E. LeSuer (P & LE Purch. Mgr.), R. W. Packer (P & LE Asst. Treas.).

Curtis D. Buford (not served).

Arthur R. Littleton, Thomas M. Kittredge, Morgan Lewis & Bockius, Philadelphia, Pa., for Fidelity Bank, Walter H. Geer (V. P. Fidelity), T. F. O'Connell (empl. Fidelity), K. M. Phillips (empl. Fidelity).

Joseph J. Connally, Ewing & Cohen, Philadelphia, Pa., for R. W. Loder (Asst. VP PC), T. A. Verlander, Jr. (Corp. Fin. Dir. PC).

John J. McCarty, Raynes, McCarty & Binder, Philadelphia, Pa., for John H. Shaffer (Treas. PC).

Gilbert J. Helwig, Pittsburgh, Pa., John E. Tener, Robinson, Robinson & Cole, Hartford, Conn., for District Court, Conn., Cameron, Evans, transferred to E. D. Va.

Eastern Dist. Wisconsin (to be dismissed).

Gilbert J. Helwig, Pittsburgh, Pa., for Balliet and So. Dist. Florida, Balliet.

Lewis H. Van Dusen, Jr., Raymond K. Denworth, Jr., Philip H. Strubing, Philadelphia, Pa., Mahlon F. Perkins, Jr.,

---

Victor Wright, Fox, Rothschild, O'Brien & Frankel, Philadelphia, Pa., for Mary Crowell.

Frederick N. Egler, Egler, McGregor & Renstadtler, Pittsburgh, Pa., Stewart Dalzell, Drinker, Biddle & Reath, Philadelphia, Pa., for P & LE RR Co.

Gilbert J. Helwig, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for Henry G. Allyn, Jr., John M. Balliet, Francis Cameron, Robert W. Carroll, Gordon E. Neuenschwander, Willard F. Rockwell, Edwin Hodge, Jr., Andrew Van Pelt.

Donovan, Leisure, Newton & Irvine, New York City, for Dist. Ct. New Jersey, Gorman, Kirby.

Thomas A. Rutter, Philadelphia, Pa., for No. District Cal., Pearlman.

Eben H. Cockley, Robert J. Hoerner, Jones, Day, Cockley & Reavis, Cleveland, Ohio, for No. District Ohio, National City Bank, Eustis, Harvey, Seaman, Mannell.

J. Howe Brown, Jr., Boothe, Prichard & Dudley, Fairfax, Va., for Eastern Dist. of Virginia, Evans.

## MEMORANDUM

GORBEY, District Judge.

Certain defendants have filed a motion for pretrial determination limiting recovery in this action to prorata recovery by certain shareholders and for other relief, and other defendants have joined in this motion. The defendants assign as a reason for the motion that if the plaintiffs prevail in these actions and recovery is allowed to go to P&LE, on whose behalf the claims have been derivatively asserted, the principal beneficiary of such recovery would be the Penn Central, the owner of approximately 93% of the outstanding stock of P&LE, and which has already been a principal beneficiary of the challenged transactions. Defendants also believe that of the remaining 7% of P&LE shareholders, many have acquiesced in or approved of such transactions. Therefore, defendants urge that in order to prevent injustice, a prorata recovery is indicated so as to limit recovery to shareholders who are free from actual participation in the allegedly wrongful acts and from acquiescence, laches, or other grounds for disqualification.

Any discussion of the problem should begin with Perlman v. Feldmann, 219 F.2d 173 (2d Cir. 1955), which is significant not only because for the first time a direct prorata recovery was decreed in a case involving a publicly held corporation, but also because it does not involve federal antitrust law or violation of the Securities Act as do the Bristol and Crowell cases with which we are here concerned. Accordingly, in the Perlman case there were no policy considerations to prevent the application of relevant state law, equitable principles and restitution. As the Supreme Court of the United States has declared:

"We have often indicated the inappropriateness of invoking broad common-law barriers to relief where a private suit serves important public purposes." Such "purposes of the antitrust laws are best served by insuring that the, private action will be an ever-present threat to deter anyone contemplating business behavior in violation of the antitrust laws. The plaintiff who reaps the reward of treble damages may be no less morally reprehensible than the defendant, but the law encourages his suit to further the overriding public policy in favor of competition. A more fastidious regard for the relative moral worth of the parties would only result in seriously undermining the usefulness of the private action as a bulwark of antitrust enforcement."

Perma Life Mufflers, Inc. v. International Parts Corp., 392 U.S. 134, 138–139, 88 S.Ct. 1981, 1984, 20 L.Ed.2d 982 (1968).

Stated differently, Section 4 of the Clayton Act was designed to supply ancillary force of private investigators to supplement the Department of Justice in law enforcement. Quemos Theatre Company, Inc. v. Warner Bros. Pictures, Inc., 35 F.Supp. 949 (D.C.N.J.1942); Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969); Weinberg v. Sinclair Refining Co., 48 F.Supp. 203 (D.C.N.Y.1942).

Another court has said that the allowance of the action for treble damages has as its purpose not merely the redress of injuries to individuals occasioned by prohibited practices but also aids in achieving the broad social object of the statute. Mach-Tronics, Inc. v. Zirpoli, 316 F.2d 820 (9th Cir. 1963).

Also, as the writer of the Law Review article on "Prorata Recovery by Shareholders on Corporate Causes of Action as a Means of Achieving Corporate Justice", states in a footnote reference to the aforementioned Perlman v. Feldmann case:

"This case apparently, did not present any of the problems arising from the existence of bondholders, preferred shareholders, or ordinary creditors." XIX Wash. and Lee L.Rev., page 186, Footnote 77 (1962).

Furthermore, the author of the aforementioned Law Review article specifically states:

"Perhaps when the defendants are directors guilty of flagrant and willful breaches of fiduciary duty toward the corporation, full payment of the corporate damages should be exacted. Even though such recovery may include a punitive element it could be justified as providing a deterrent against such breaches of fiduciary duty." Id. at 169, 170.

Bangor Punta Operations, Inc. v. Bangor and Aroostook R. Co., 417 U.S. 703, 94 S.Ct. 2578, 41 L.Ed.2d 418 (1974), relied upon by defendants, must be distinguished on its facts from the present cases. It is not a derivative action brought by minority stockholders but, as stated by the court:

"This case involves an action by a Maine railroad corporation seeking damages from its former owners for violation of federal antitrust and securities laws, applicable state statutes, and common-law principles. The complaint alleged that the former owners had engaged in various acts of corporate waste and mismanagement during the period of their control. The shareholder presently in control of the railroad acquired 98.3% of the railroad's shares from the former owner long after the alleged wrongs occurred. We must decide whether equitable principles applicable under federal and state law preclude recovery by the railroad in these circumstances." Id. at 705, 94 S.Ct. at 2580.

In the district court, after noting that Amoskeag, the then present owner of more than 99% of the outstanding stock of the plaintiff railroad, had acquired all of its stock long after the alleged wrongs occurred, held that recovery on Amoskeag's part would constitute a windfall because it had sustained no injury, there being no contention that it did not receive full value for its purchase price, or that the transaction was tainted by fraud or deceit. The district court then determined that Amoskeag would have been barred from maintaining a stockholder's derivative action because of its failure to satisfy the contemporaneous ownership requirement of Fed.Rule Civ.Proc. 23.1(1), which states that the complaint should aver that "the plaintiff was a shareholder or member at the time of the transaction of which he complains . . .".

The denial of recovery was appealed to the United States Court of Appeals for the First Circuit, 482 F.2d 865 (1973), which reversed the district court decision, disagreeing with its conclusion that any recovery would inure only to the benefit of the subsequent purchaser of 99% of the plaintiff railroad's stock. Because of the railroad's status as a public or quasi-public corporation, the Court of Appeals concluded that any recovery would also inure to the benefit of the public. Considering the possibility that any corporate recovery might be diverted to enrich the present stockholders including Amoskeag, the owner of 99% of the stock, the court concluded that the public interest would nevertheless be better served by insuring that petitioners would not be immune to civil liability for their allegedly wrongful conduct.

The Supreme Court of the United States granted certiorari, and reversed the Circuit Court of Appeals. Bangor Punta Operations, Inc. v. Bangor and Aroostook R. Co., *supra*. The Supreme Court held that there was no legal method by which a court could assure that any recovery allowed would go for the

benefit of the public rather than the 99% owner of the railroad stock. The plaintiff railroad "would be entitled to distribute the recovery in any lawful manner it may choose, even if such distribution resulted only in private enrichment." Id., 417 U.S. at 715, 94 S.Ct. at 2585.

The Supreme Court determined that a recovery in the case must be denied in order to prevent unjust enrichment of Amoskeag, the railroad's 99% owner. It disposed of the Circuit Court's conclusion that a recovery should nevertheless be allowed as "a needed deterrent to mismanagement of railroads", Id., at 717, 94 S.Ct. at 2586, holding that such cannot be done *when there has been no injury to the particular plaintiff*. As stated by the Court in footnote 13, page 717, 94 S.Ct. page 2586, "But the statutory design has not been effectuated through the indiscriminate provision of causes of action to every citizen.", and referring to federal antitrust and securities statutes continued "these statutes create specifically defined legal duties to particular plaintiffs and vest the appropriate causes of action in them alone. Here, the statutorily designated plaintiffs are respondent corporations. But, as we have stated, these plaintiffs cannot maintain the present action because a recovery by Amoskeag would violate established principles of equity."

A major distinguishing characteristic of this important case as compared with the Crowell and Bristol cases *sub judice,* is that what the court said and what it did, was with respect to a situation where a stockholder's derivative action could not have been maintained because of its inability to satisfy the contemporaneous ownership requirement of Federal Rule of Civil Procedure 23.1(1), or of the law of Maine. In both the Bristol and Crowell cases, the plaintiffs have satisfied the requirements of the aforementioned federal rule and it is clear in these derivative actions that the captive corporation involved, the P&LE Railroad would, if recovery is allowed, not reap a windfall.

The 93% owner of P&LE Railroad stock, the Penn Central, which would, of course, also benefit from any recovery awarded P & L Railroad is in an entirely different position than its 99% counterpart in the Bangor case. The Penn Central, in the process of reorganization, is subject to the control of court appointed trustees, and United States District Court Judge John P. Fullam. In such a situation it is quite apparent that bondholder and other creditors of the Penn Central, as well as the general public, and the P&LE Railroad, have interests which would best be served by allowing a corporate recovery. These legitimate interests would be completely ignored if the liability of the defendants be reduced to a prorata liability amounting to only 7% or less of the damage alleged to have been suffered by P&LE Railroad as a result of the alleged violations of the federal antitrust and securities laws.

The plaintiffs in the Bristol and Crowell cases, being proper representatives of the P&LE Railroad under Federal Rule 23.1(1), present perfect situations to illustrate the inappropriateness of invoking broad common law barriers to relief where a private suit serves important public purposes. Such important cases as Simpson v. Union Oil Co., 377 U.S. 13, 84 S.Ct. 1051, 12 L.Ed.2d 98 (1964) and Kiefer-Stewart Co. v. Jos. E. Seagram & Sons, 340 U.S. 211, 71 S.Ct. 259, 95 L.Ed. 219 (1951) indicate the Supreme Court's recognition that "[T]he purposes of the antitrust laws are best served by insuring that the private action will be an ever-present threat to deter anyone contemplating business behavior in violation of the antitrust laws." Perma Life Mufflers, Inc. v. International Parts Corp., *supra,* 392 U.S. at 139, 88 S.Ct. at 1984.

To state it differently, "private stockholders' actions of this sort 'involve corporate therapeutics' and furnish a benefit to all shareholders by providing an important means of enforcement of the . . . statute." Mills v. Electric

Auto-Lite Co., 396 U.S. 375 at 396, 90 S.Ct. 616, 628, 24 L.Ed.2d 593 (1970).

Finally, it should be observed that the function of the prorata recovery theory and the *in pari delicto* principle is identical, i. e., to prevent a wrongdoer from profiting by his own wrong. Since the Supreme Court of the United States has held in Perma Life Mufflers, Inc. v. International Parts ·Corp., *supra,* that the doctrine of *in pari delicto* is not a defense to antitrust actions, it having been earlier held that the common law defenses of laches, waiver and estoppel have no application in a federal antitrust action, South-East Coal Co. v. Consolidation Coal Co., 434 F.2d 767 (6th Cir. 1970), cert. denied, 402 U.S. 983, 91 S.Ct. 1662, 29 L.Ed.2d 149 (1971), it would seem to follow that the prorata liability principle likewise has no application to antitrust or securities actions such as the Bristol and Crowell cases, so clearly distinguishable from the Bangor railroad case.

The Home Fire Insurance Co. v. Barber case, 67 Neb. 644, 93 N.W. 1024 (1903), relied upon by the majority of the court in the Bangor case is clearly distinguishable from the facts of the Crowell and Bristol cases, the cases at bar. In the Home Fire Insurance Co. case *all* of the shares of the plaintiff corporation had been acquired from the alleged wrongdoers after the alleged wrongful transactions had occurred. Accordingly, it was held that equitable principles precluded a recovery by the plaintiff corporation since *none* of its shareholders could complain of injury.

However, Dean Pound, in that case, did express an opinion with respect to a factual situation where as here in the Bristol and Crowell cases, there are minority stockholders who were such at the time of the alleged wrongful transactions. With respect to that situation an action by the corporation itself, would be appropriate for a full recovery (and a fortiori by minority stockholders in a derivative action on behalf of the corporation, if the directors turned down a request to seek relief). The court stated that a recovery could be had if *any* of the present shareholders "are entitled to complain of the acts of the defendant and of his past management of the company; for, if any of them are so entitled, there can be no doubt of the right and duty of the corporation to maintain this suit. It would be maintainable in such a case, even though the wrongdoers continued to be stockholders and would share in the proceeds." 67 Neb. at 665, 93 N.W. at 1028.

In Footnote 15, 417 U.S. page 718, 94 S.Ct. page 2587 of the Bangor case the Court refers to the pro rata recovery concept where there are qualified minority shareholders, but after stating that respondents had expressly disavowed any intent to obtain a prorata recovery on behalf of the 1% minority shareholders, concluded: "We therefore do not reach the question whether such a recovery would be appropriate."

The net result of the Bangor case, as far as a majority of the Court is concerned, is that no recovery can be had by a plaintiff corporation where the beneficiary of a recovery would be a corporation which had purchased 99% of the stock of the plaintiff corporation *after* the alleged wrongful transactions.

The majority opinion does not indicate what its conclusion would be in an entirely different situation, such as the present one where a beneficiary of any recovery would be a corporation which owned 93% of the stock during the time of the alleged wrongful transactions, and where the plaintiff, qualified minority stockholders, have brought a derivative action in behalf of the injured corporation, the P&LE Railroad.

In the very first paragraph of the majority opinion, on page 705, 94 S.Ct. on page 2580, after pointing out that the shareholder presently in control of the railroad acquired 98.3% of the railroad shares from the former owners long after the alleged wrongs occurred, the Court then states: "We must decide whether equitable principles applicable under federal and state law preclude re-

covery by the railroad *in these circumstances.*" (Emphasis supplied)

■ Research has revealed no Supreme Court case in which in a securities or antitrust case similar to the Bristol and Crowell cases, the Court has mandated a prorata recovery solution, or denied any recovery at all merely because it would also benefit the corporation which owns a majority of the stock of the injured corporation. Certainly a full recovery in the instant cases would be consistent with the views expressed by the four Justices in the dissenting opinion in the Bangor case, which views it is believed, would be shared by the majority where the beneficiary corporation owned its 93% interest prior to and during the allegedly illegal transactions, and where, as here, the action brought is a derivative action on behalf of the injured corporation.

Having reached the aforementioned conclusions, further discussion of the cases would seem to be no more productive than "bathing the goldfish".[1]

The conclusion is, therefore, that the defendants' motion for pretrial determination limiting recovery to prorata recovery by certain shareholders and for other relief is denied.

---

[1.] An expression gratefully and appreciatively borrowed from a recent interim stockholder's report issued by the Phillips Petroleum Company.