Brenda **ALDERMAN** et al.

v.

**PHILADELPHIA HOUSING AUTHORITY** et al.

**Civ. A. No. 73–766.**

United States District Court, E. D. Pennsylvania.

April 22, 1976.

Harold I. Goodman, Germaine Ingram, Community Legal Services, Robert M. Reinstein, Philadelphia, Pa., for plaintiffs.

Harold Cramer, Marc S. Cornblatt, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

NEWCOMER, District Judge.

The sole issue remaining to be adjudicated in this case is plaintiffs' motion for an award of attorneys' fees. Because the plaintiffs are unable to bring this case within any of the recognized exceptions to the "American Rule" which normally precludes recovery of attorneys' fees by a prevailing party, the plaintiffs' motion must be denied.

The plaintiffs originally brought this action seeking declaratory and injunctive relief following their discharges from employment with the Philadelphia Housing Authority ("PHA"). Plaintiffs had been discharged for refusing to sign a memorandum issued by the PHA which prohibited employees from discussing an upcoming tenant plebiscite. After a full trial, this Court made extensive findings of fact and entered judgment for the defendants. See 365 F.Supp. 350 (E.D.Pa.1973). Upon the plaintiffs' appeal from this judgment, the Court of Appeals for the Third Circuit reversed, finding that the plaintiffs' First Amendment rights had been violated. See 496 F.2d 164 (1974). The United States Supreme Court denied defendants' Petition for a Writ of Certiorari. See 419 U.S. 844, 95 S.Ct. 77, 42 L.Ed.2d 72 (1974). At this point the parties amicably resolved substantially all of their differences concerning the appropriate relief, except for the plaintiffs' request for attorneys' fees. Plaintiffs then filed their motion to compel an award of attorneys' fees.

The propriety of awarding attorneys' fees without a statutory authorization was recently considered by the United States Supreme Court in *Alyeska Pipeline Service Co. v. The Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). In *Alyeska* the Court strongly reaffirmed the usual "American Rule" that attorneys' fees are not awarded to a prevailing litigant. The Court rejected the "private attorney general" theory as a basis for awarding attorneys' fees, and held that the legislature, not the courts, is the proper branch of government to consider a redistribution of the costs of litigation.

In addition to recognizing statutory authority as a basis for an award of attorneys' fees, the Supreme Court also noted three historical exceptions to the "American Rule." Attorneys' fees can be awarded when a party has willfully disobeyed a court order, when the losing party has acted

in bad faith, or when a party's successful litigation has conferred a substantial benefit on an ascertainable class (the common benefit theory). These exceptions must be construed narrowly, in light of the Supreme Court's clear statement 'that the award of attorneys' fees is a matter for the legislature, and that courts do not have the authority "to allow counsel fees as costs or otherwise whenever the courts might deem them warranted." 421 U.S. at 260, 95 S.Ct. at 1623, 44 L.Ed.2d at 155.

■ In this case there is no statutory basis for awarding attorneys' fees, and there has been no willful disobedience of a court order. Plaintiffs do assert, however, that they are entitled to attorneys' fees under the bad faith and the common benefit exceptions. Plaintiffs argument concerning the bad faith exception can be disposed of easily. As the defendants indicate in their memorandum of law, "bad faith" requires something more than a finding of a constitutional violation. Otherwise, every successful plaintiff who vindicates constitutional rights would be entitled to attorneys' fees. This is not the law. See *Alyeska, supra*, 421 U.S. at 263, 95 S.Ct. at 1625, 44 L.Ed.2d at 157. The plaintiffs must show that the defendants "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Alyeska, supra*, 421 U.S. at 258, 95 S.Ct. at 1622, 44 L.Ed.2d at 154.

■ In order to make this showing, plaintiffs point to several circumstances surrounding their dismissals for failure to sign the memorandum. For example, the facts indicate that the four plaintiffs were the only employees discharged, even though about 65 employees never signed the memorandum. However, plaintiffs were the only employees who refused to sign. The plaintiffs also contend that PHA demonstrated bad faith by rebuffing the plaintiffs' attempts to discuss the memorandum before signing. However, this Court made explicit findings that each plaintiff had had an opportunity to explain his refusal to sign the memorandum and to ask questions about it. 365 F.Supp. at 359–60 (Findings of Fact 47, 56, 68, 77). Finally, the plaintiffs claim

that the defendants acted in bad faith because defendant Gilbert Stein, who had been responsible for issuing the memorandum in his capacity as Executive Director of the PHA, himself violated its terms. This alleged violation took place when a report authored by Mr. Stein was published in the PHA newspaper after Mr. Stein left office. Since Mr. Stein was no longer a PHA employee, the report was not a violation of the memorandum. See 365 F.Supp. at 360 (Finding of Fact 81).

The near frivolousness of plaintiffs' bad faith argument is demonstrated by the history of this case. This Court found the defendants' actions to be constitutionally permissible, and also found that issuance of the memorandum served several governmental interests, such as insuring free and fair elections, preventing violence, and preserving an appearance of impartiality for PHA. See 365 F.Supp. at 355–56 (Finding of Fact 19). Although the Court of Appeals found that requiring employees to sign the memorandum and discharging the plaintiffs for refusing to sign could not be justified under the First Amendment, nothing in that court's opinion suggests that the defendants acted in bad faith. In fact, the court indicated that there were important interests on each side:

"The 'balancing' task imposed upon us in this case by the prior restraint doctrine is a somewhat sensitive one. We recognize, and sympathize with, the PHA's desire to preserve intact a public image of political impartiality. We acknowledge, too, that a governmental agency may have a significantly more weighty interest in regulating the speech of its employees than in regulating that of the populace at large." 496 F.2d at 173–174 (footnote omitted).

Thus, both this Court's Findings of Fact and Judge Adams' opinion for the Court of Appeals fail to support the plaintiffs' claim that the defendants acted in bad faith. The evidence shows that the defendants' actions were motivated by a legitimate concern for preserving the impartiality of the PHA. While the defendants' actions have been

found to violate the plaintiffs' constitutional rights, there is no evidence that the defendants acted arbitrarily, oppressively, or with malice. Consequently, an award of attorney fees based on the defendants' bad faith is not appropriate.

The plaintiffs also contend that attorneys' fees should be awarded in this case on the basis of the "common benefit" exception to the usual American Rule. The common benefit exception developed as a means of spreading the costs of litigation, where the litigation results in the creation of a fund of money that is divided among an identifiable class of persons. If the plaintiff was forced to bear all the costs of bringing the suit, other members of the class who would benefit from the plaintiff's efforts would be unjustly enriched. By awarding attorneys' fees out of the fund before it is divided among the beneficiaries, the costs of the litigation can be shared proportionately by the persons who benefit from the suit.

Although the common benefit exception originally was applied only in cases where a monetary benefit was conferred, the United States Supreme Court recently has extended the common benefit rationale to cases involving non-monetary benefits. In *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970), the plaintiff established that a corporate merger was accomplished through the use of a materially misleading proxy statement, in violation of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a). The court authorized an award of attorneys' fees because the plaintiff's litigation had conferred a substantial benefit upon the corporation and its shareholders by vindicating the statutory policy that shareholders should be fairly informed when proxies are solicited. The court likewise allowed attorneys' fees in *Hall v. Cole*, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973), where the plaintiff union member had vindicated his own rights of free speech under the Labor Management Reporting and Disclosing Act, 29 U.S.C. § 411(a)(2), and thereby rendered a substantial service to the union and all of its members.

■ The applicability of the common benefit exception to the present case in many respects is controlled by *Hall v. Cole, supra.* As in *Hall,* the plaintiffs in this case successfully asserted the right to freedom of speech, and the benefit conferred by the litigation was relief from an official restraint on discussion. Nevertheless, despite the similarities to *Hall,* there is an important difference between this case and *Hall* which prevents an award of attorneys' fees on the rationale of the common benefit exception. Here the benefit was conferred upon all PHA employees, and arguably upon the PHA itself. In this situation an award of attorneys' fees paid by the PHA would not spread the litigation cost among the class of persons benefitted by the litigation. The requirement that the award of attorneys' fees operate to spread the costs among the beneficiaries of the suit goes to the essence of the common benefit exception, and it has been stressed repeatedly by the Supreme Court:

> "Other cases have departed further from the traditional metes and bounds of the doctrine, to permit reimbursement in cases where the litigation has conferred a substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them." *Mills v. Electric Auto-Lite Co., supra,* 396 U.S. at 393–94, 90 S.Ct. at 626, 24 L.Ed.2d at 607.

> "To award attorneys' fees in such a suit to a plaintiff who has succeeded in establishing a cause of action is not to saddle the unsuccessful party with the expenses but to impose them on the class that has benefitted from them and would have had to pay them had it brought the suit." *Mills v. Electric Auto-Lite Co., supra* at 396–97, 90 S.Ct. at 628, 24 L.Ed.2d at 609.

■ Even though the litigation did not create a fund of money, the common benefit theory could be applied in *Mills* and *Hall* because of the special nature of the defendant organization and the class of beneficiaries. In *Mills* a derivative suit was brought against a corporation on behalf of its share-

holders. Since shareholders are owners of the corporation, awarding attorneys' fees against the corporation is a means of assessing fees against all the shareholders who were benefitted by the litigation. Similarly, in *Hall* an award of attorneys' fees against the union was a means of shifting the litigation costs to all the members of the union whose rights had been vindicated. In this case, I can discern no such mechanism through which attorneys' fees can be assessed against PHA employees, the primary beneficiaries of this litigation.[1] The employees are not owners of the PHA, nor are they constituent members of the organization. Therefore, an award of attorneys' fees against the PHA will not be charged against the employees or reduce their interest in any way. In these circumstances the common benefit exception cannot be employed.

The plaintiffs have cited several cases in an attempt to avoid the requirement that the costs be spread proportionately among those who benefitted. In *Miller v. Carson*, 401 F.Supp. 835 (M.D.Fla.1975), the plaintiffs obtained injunctive relief to improve conditions in the Duval County Jail. The court held that the plaintiffs thereby rendered a common benefit to all citizens of Duval County. 401 F.Supp. at 853. The court analogized the citizens of the County to shareholders of a corporation, and found that the plaintiffs' preservation of constitutional rights was similar to a shareholder's preservation of corporate rights in a derivative suit. The reasoning of the court in *Miller* in many ways seems to be a reformulation of the now discredited private attorney general theory. But even if that reasoning is accepted, the *Miller* case is distinguishable. Attorneys' fees assessed against the city government, as in *Miller*, in effect will be paid by the city's taxpayers. Presumably, this class of taxpayers will approximate the class of persons who benefitted from the suit, since the court found that all citizens were beneficiaries. In the in-

stant case, fees assessed against the PHA also ultimately will be paid by the taxpayers. However, these taxpayers are in no way an approximation of the beneficiaries of this suit, since even the plaintiffs have claimed that the beneficiaries of this suit were PHA employees and the PHA itself. Consequently, imposing attorneys' fees against the PHA will not spread the costs proportionately among the beneficiaries of the suit, as required under the common benefit theory.

Plaintiffs also rely on *Brewer v. School Board of City of Norfolk*, 456 F.2d 943 (4th Cir. 1972), for the proposition that a court applying the common benefit theory can award attorneys' fees against the most appropriate party, even if the award will not result in distributing the costs of litigation among those benefitted. The award of attorneys' fees in *Brewer* was premised on "exceptional circumstances," in that the plaintiffs had obtained a direct pecuniary benefit for all students of the school system who were assigned to schools outside their neighborhood. See 456 F.2d at 951–52. There are no such direct pecuniary benefits in this case. Moreover, *Brewer* was decided before the Supreme Court limited awards of attorneys' fees in *Alyeska Pipeline Service Co. v. The Wilderness Society, supra.* In *Alyeska*, the Supreme Court reiterated the requirement that in common benefit cases the attorneys' fee must be shared by those who benefitted from the litigation:

> "In this Court's common fund and common benefit decisions, the class of beneficiaries was small in number and easily identifiable. The benefits could be traced with some accuracy, and there was reason for confidence that the costs could indeed be shifted with some exactitude to those benefitting." 421 U.S. at 265, n. 39, 95 S.Ct. at 1625, n. 39, 44 L.Ed.2d at 157 n. 39.

In light of this recent statement of the law by the United States Supreme Court, this

---

1. The possibility that the PHA itself might be considered a beneficiary of this litigation does not alter this conclusion. Since the PHA certainly is not the only beneficiary, an assess- ment of attorneys' fees against it would not "spread the costs proportionately" among the persons benefitted.

Court cannot rely on the earlier decision of the Fourth Circuit in *Brewer*.

All of the recent Supreme Court decisions which have dealt with awards of attorneys' fees under the common benefit theory have required that the award shift the costs of litigation to the beneficiaries of the litigation. This cannot be accomplished in this case through an assessment of attorneys' fees against the PHA, so an award of attorneys' fees cannot be premised on the common benefit exception. As has been discussed previously, the bad faith exception also is unavailable to the plaintiffs. Under *Alyeska*, no other theory for awarding attorneys' fees can be applied to this case, and none has been asserted. Hence, the usual American Rule which denies attorneys' fees to prevailing litigants must control.