**D. C. FEDERATION OF CIVIC ASSOCIATIONS et al., Plaintiffs,**

v.

**John A. VOLPE, Secretary of Transportation, et al., Defendants.**

**Civ. A. No. 2821–69.**

United States District Court, District of Columbia.

April 30, 1976.

9. 43 F.R.D. 397, 398–99 (S.D.N.Y.1967).

10. *Free World Foreign Cars, Inc. v. Alfa Romeo*, 55 F.R.D. 26, 30 (S.D.N.Y.1972).

Roberts B. Owen, Stuart C. Stock, Covington & Burling, Washington, D. C., for plaintiffs.

Thomas L. McKevitt, Atty., U. S. Dept. of Justice, Washington, D. C., for defendant John A. Volpe.

Thomas C. Bell, Asst. Corp. Counsel, Washington, D. C., for defendant District of Columbia.

## MEMORANDUM AND ORDER

SIRICA, District Judge.

This case comes to the Court on remand from the U. S. Court of Appeals for the District of Columbia. That Court has instructed this Court to vacate the portion of the Amended Final Judgment, filed by this Court on March 22, 1974, in which the plaintiffs' request for an award of attorneys' fees against the D. C. government was denied, and to rule again on that issue. It has also requested, should this Court again deny the plaintiffs' motion, a statement of rea-

sons for the denial, inasmuch as the plaintiffs relied on the "substantial benefit [to] members of an ascertainable class" theory of *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970).

## I.

This case has had a complicated history. It has been part of a long and sometimes bitter controversy between various District of Columbia and federal officials who supported the building of the so-called Three Sisters Bridge across the Potomac from the District to Arlington, Virginia, and groups of citizens in the metropolitan Washington, D. C. area who were opposed to it. Battles were fought in both political and judicial forums.

The fifteen plaintiffs in the case are a diverse group. Five are individual persons; four of whom are apparently D. C. residents and taxpayers and one of whom is an owner of property in the District of Columbia which was located directly within the proposed right-of-way for the bridge. Seven are D. C. neighborhood civic associations, some if not all of whose members are D. C. residents and taxpayers. One is the Georgetown Planning Council, Inc., a nonprofit group organized to promote rational urban planning in the Georgetown section of the District of Columbia—the area of the city that would have been most directly affected by the building of the bridge. Another is the Committee of 100 on the Federal City, a nonprofit group organized to promote sound city planning in the city and its environs. The final one is the Arlingtonians for Preservation of the Potomac Palisades, an association of Arlington, Virginia, homeowners, residents, and church groups organized for the purpose, among other things, of protecting the park and residential qualities of the Palisades area of the Potomac River—an area that would have been substantially changed had the bridge been built.

In the substantive portion of the case, these plaintiffs were successful, both in this Court and in the Court of Appeals, in halt-

ing progress on the Three Sisters Bridge until transportation officials of the federal and D. C. governments complied with various statutory requisites. Thereafter, the plaintiffs petitioned this Court to shift the burden of paying the attorneys' fees they incurred in the course of bringing this suit to the defendant D. C. government. They recognized that the general rule in American courts has been that attorneys' fees are not a part of awardable costs. However, in their memoranda for the Court, they listed a number of theories upon which other courts, in certain cases, had varied from this general rule, and they argued that these theories should operate here. Among these theories plaintiffs cited the "bad faith," the "private attorney general," and the "common benefit" theories. Given the prior decisions of this Court and the Court of Appeals in this case, and of the Supreme Court in *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), the "common benefit" theory is the only one of these upon which the plaintiffs can still rely. And it is upon this theory which has been advanced by the plaintiffs that the Court of Appeals has requested that the Court comment.

## II.

The leading case in the federal courts on the "common benefit" theory for shifting the burden of paying attorneys' fees is *Mills v. Electric Auto-Lite Co., supra.* There the Supreme Court noted that courts:

. . . have departed further from the traditional metes and bounds of the doctrine [that attorneys' fees are not ordinarily recoverable as costs], to permit reimbursement in cases where the litigation has conferred a substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them. This development has been most pronounced, in shareholders' derivative actions, where the courts increasingly have recognized that the expenses incurred by one shareholder in the vindication of a corporate right of action can be spread among shareholders through an award against the corporation. . . . [396 U.S. 393–94, 90 S.Ct. 626, 24 L.Ed.2d 607]

Clearly, as the plaintiffs concede, this theory is an equitable one. It demands that a court carefully weigh the equities in favor of and against shifting the costs of attorneys' services to one or all of the defendants. And in *Mills* the court there found that the cost of attorneys' fees could equitably be shifted to the defendant if:

(1) the outcome of the suit resulted in a substantial benefit; and

(2) if the benefit resulting accrued to a class or group of people which could be clearly ascertained; and

(3) if the costs of the litigation could be assessed proportionately against all of the members of the class who benefitted, by assessing the costs against the defendant.

As the Court indicated in *Mills* this theory, based upon these criteria, has had very limited application.

*Mills* was a shareholders' derivative action. The particular injury involved in that case was that the management of Electric Auto-Lite had obtained proxies for a merger vote by means of a misleading proxy statement which failed to disclose a serious conflict of interest on the part of the directors. Under those particular circumstances, the court held that a substantial benefit was conferred to others not plaintiffs in the suit, namely, all of the shareholders of the corporation in addition to the shareholder-plaintiffs. Also, the Court could ascertain, with a great degree of certainty, the class or group of persons who benefitted from the action, namely the shareholders of record in the Electric Auto-Lite Co. And finally, the court found that it could easily shift the cost of attorneys' fees proportionately to all of the beneficiaries of the suit by assessing the costs against the corporation, of which each shareholder has a proportionate interest and thus would pay a proportionate share of the fees.

Relying upon this theory, and viewing the instant case as somewhat analogous to *Mills,* plaintiffs request this Court to assess attorneys' fees against the defendant D. C. government.

The plaintiffs have acknowledged that 28 U.S.C. § 2412 (1970) would prevent the Court from charging the attorneys' fees in this case to the United States government, even if the Court were to find that the equities favored that. See *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 265–68, 95 S.Ct. 1612, 1626–1627, 44 L.Ed.2d 141, 158–159 (1975). They argue, however, that no such statutory prohibition prevents assessing these costs against the defendant District of Columbia government, and thereby against the District of Columbia taxpayers. They note that the D. C. council, as the local legislative branch, has apparently decided to withdraw the Three Sisters Bridge from the Interstate Highway System,[1] and that this decision essentially kills any possibility that such a bridge will be built in the foreseeable future. They argue that this suit in some way brought about that decision and that therefore the plaintiffs saved the taxpayers of the District of Columbia the money they would have had to contribute to the building of the bridge—at least $3 million and probably as much as $30 million. This, they assert, makes the taxpayers of D. C. exactly like the shareholders in *Mills* : recipients of a substantial benefit who may equitably be saddled with the attorneys' fees incurred in obtaining that benefit. This Court believes, however, that this case is substantially different from the facts and circumstances in *Mills* and the criteria set forth in *Mills* are not met here.

### III.

The Court is not at all certain as to what actual benefit resulted from the plaintiffs' success on the merits of this case. As indicated above, the plaintiffs have argued that the orders in this case that stopped progress on the bridge until federal and D. C. transportation officials fulfilled certain prerequisites somehow caused the D. C. Council's decision to drop the bridge from its plans and thus saved the taxpayers of D. C. a great deal of money that they now will be able to spend in other ways.

But the plaintiffs have not made it clear exactly how this suit caused the D. C. Council to decide that the bridge project should be scrapped. That decision was not a legal one made by this Court, but a legislative one which was, in part, the result of an intensive lobbying effort by numerous citizens of the District and of the enactment of 23 U.S.C. § 142(c) (Supp.1974).[2] See *Washington Post,* August 22, 1975, § B, at 7, col. 3. This suit, on the other hand, never held that the Three Sisters Bridge could not be built; both this Court and the Court of Appeals recognized that federal and District of Columbia officials must decide that for themselves. Rather, the courts simply held that before a decision could be made to build the bridge, transportation officials in the federal and D. C. government must make particular findings "strictly on the merits and in the manner prescribed by statute . . . ." *D. C. Federation of Civic Associations v. Volpe,* 148 U.S.App. D.C. 207, 459 F.2d 1231, 1248 (1971), *cert. denied,* 405 U.S. 1030, 92 S.Ct. 1290, 31 L.Ed.2d 489 (1972). Whether these officials would still have decided that the bridge should be built after they had fulfilled these requirements we may never know. But it is clear that the findings on the merits in this case did not determine whether or not the bridge could or would be built. Nor can the plaintiffs argue that but for this suit the bridge would have been built.[3] In fact, the only causal connection that can

---

1. The Council apparently has not yet officially withdrawn the bridge from the Interstate System. But there does not seem to be any doubt that it will do so soon.

2. This section, passed in 1973, permits the D. C. Council to use that portion of federal monies previously dedicated for the bridge project for mass transit purposes.

3. The day after the Supreme Court denied certiorari in the substantive part of this case, a representative of the Citizens Association of Georgetown recognized that the plan to build the Three Sisters Bridge was still very much

be established with some certainty between this suit and the decision not to build the bridge is that this suit, by requiring that certain government officials comply with the necessary statutes before going forward, delayed the building of the bridge, which delay eventually, due to other intervening circumstances,[4] led to the plan being abandoned.

Thus, the Court fails to find the "substantial benefit" which the plaintiffs argue accrued to the taxpayers of the District of Columbia as a result of their success on the merits of this case.

Even if the Court were to assume, for the sake of argument, that the benefit which resulted from this case was to end the project to build the bridge, plaintiffs fail in their arguments to convince this Court that this case conforms to the second and third criteria of *Mills*. Plaintiffs argue that the "ascertainable class" in this case is the D. C. taxpayers.

If, in fact, the benefit of this law suit was to stop the construction, a far larger class of persons benefitted than just D. C. taxpayers; for benefits accrued, monetary and otherwise, to those on both sides of the Potomac.[5] Because of the part that this suit allegedly played in stopping the bridge from being built, many residents of Maryland and Virginia will better be able to enjoy the natural beauty of the Potomac Palisades; no doubt this is precisely why the Arlingtonians for Preservation of the Potomac Palisades joined as a plaintiff in this suit. In addition, there are even more far reaching benefits which could result from the scrapping of the bridge project; for example, commuters from suburban Maryland and Virginia may benefit from the use of the funds, dedicated previously for the bridge, for a more swift completion of the area's mass transit system.

The point is, simply stated, that the class of beneficiaries is not what the plaintiffs state.[6]

■ Since the class of beneficiaries includes many persons who are not D. C. taxpayers, the *Mills* theory cannot be used in this case. Should this Court assess attorneys' fees against the defendant D. C. government, such action would be inequitable since it *would not* "operate to spread the costs proportionately among [the beneficiaries]." *Mills* at 394, 90 S.Ct. at 626, 24 L.Ed.2d at 607. What makes shifting the burden of costs so unsatisfactory in this case is that, by doing so, the Court would actually be shifting it from the non-D. C. taxpayer beneficiaries, such as the members of the Arlingtonians for Preservation of the Potomac Palisades, who as plaintiffs would normally have to pay these fees. Such shifting would then place the burden onto the shoulders of D. C. residents in such relatively remote areas as Anacostia, who, even assuming the substantial tax savings the plaintiffs claim to have obtained for them, cannot be said to have had nearly so great an interest in this suit. The Court cannot see the equity in this.

■ Another consideration weighing against shifting the costs of the attorneys' fees in this case relates to the fact that the District of Columbia is a governmental body. As indicated above, if the D. C. government should be considered an arm of the federal government, there is no question that the Court would be without power to charge attorneys' fees against it. 28 U.S.C. § 2412 (1970); *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 265–68, 95 S.Ct. 1612, 1626–1627, 44

---

alive and urged Congress to help kill it. Washington Post, March 30, 1972, § B, at 4, col. 1.

4. The intervening circumstances include the lobbying efforts of several groups and the passage of 23 U.S.C. § 142(c) (Supp.1974) in 1973 which allows the D. C. Council to use the federal monies that would have been spent on the bridge to help finance the metropolitan area's mass transit project.

5. In *Mills*, the court recognized that a "substantial benefit" need not be only pecuniary in nature. *Mills*, 396 U.S. at 395, 90 S.Ct. at 627, 24 L.Ed.2d at 608.

6. In fact, if it were, one of the named plaintiffs, Arlingtonians for Preservation of the Potomac Palisades, would be denying having received any benefit as a result of their success in this suit.

L.Ed.2d 141, 158–159 (1975). On the other hand, if the District of Columbia should be considered a state for Eleventh Amendment purposes, which is more likely, it is questionable whether this Court would be constitutionally permitted to award attorneys' fees against it. *Alyeska Pipeline Service Co., supra,* at 269 n. 44, 95 S.Ct. at 1627, 44 L.Ed.2d at 160. But it is unnecessary for the Court to reach these troublesome questions. For even if the District of Columbia can claim the benefit of neither statute nor the Constitution to bar being assessed with attorneys' fees, this Court must still weigh heavily the values that lie behind them in determining whether, in its discretion, it should shift that burden to the District of Columbia. Those values are, in this Court's view, ones of comity and of avoiding interfering in what are essentially legislative decisions concerning how much public money is to be spent and to what ends. Such interference is especially difficult to justify in a case such as this, where there is the fairly simple alternative—which the plaintiffs availed themselves of here—of joining together in groups of citizens within the community who are most interested in the outcome of the suit and who, most equitably should be responsible for paying the attorneys' fees incurred.

Finally, in this Court's opinion, those who brought this suit, both D. C. taxpayers and non-D. C. taxpayers, presumably had the greatest interest in it and, therefore, received the greatest benefit from the Court's findings on the merits. This being the case, the burden of attorneys' fees may most equitably be distributed by letting the costs remain with the plaintiffs.

Based upon all of the foregoing considerations, this Court holds that the "common benefit" theory of *Mills v. Electric Auto-Lite Co., supra,* is inapplicable to the instant case and that equity requires that the attorneys' fees incurred by the plaintiffs should be paid by the plaintiffs.

IV.

Accordingly, it is this 30th day of April, 1976,

ORDERED that the portion of this Court's Amended Final Judgment, filed on March 22, 1974, in which the Court denied the request that the attorneys' fees incurred in the course of this litigation be charged to the District of Columbia be, and the same hereby is, vacated; and it is further

ORDERED that plaintiffs' further request for attorneys' fees be, and the same hereby is, denied.