Kathryn **WILCOX**, Plaintiff,

Frank J. Kelley, Attorney General of the State of Michigan, and the Michigan Department of Social Services, Intervenors,

v.

**SHERWOOD MEDICAL COMPANY, INC., ARGYLE DIVISION,** a New York Corporation and a Subsidiary of American Home Products Corporation, Jointly and Severally, Defendants.

No. G84–516.

United States District Court,
W.D. Michigan, S.D.

April 29, 1986.

Mark H. Verwys, Grand Rapids, Mich., Douglas McFadden and William A. Van Eck, Belding, Mich., for plaintiff.

James D. Clarke, State Atty. Gen., Lansing, Mich., for intervenors.

John C. Buchanan and Jeffrey H. Beusse, Grand Rapids, Mich., for defendants.

## OPINION

ENSLEN, District Judge.

Presently before the Court in this case is Intervenors' Motion for Reconsideration of the Magistrate's Order Granting Plaintiff's Motion for Contribution for Costs and Attorney Fees. For the reasons discussed below, the Court will deny the Intervenors' motion and will affirm Magistrate Doyle A. Rowland's Order of December 10, 1985.

*Facts*

This action was filed on May 17, 1984, on behalf of an infant, B.J. Williamson, III, who had suffered severe brain damage due to the alleged malfunction of one of defendants' products. The infant died shortly after the commencement of this action. Plaintiff requested compensation from defendants for, among other items, "extensive and extraordinary medical, rehabilitation, educational and care expenses." First Amended Complaint ¶ 10.

Intervenors filed a Motion for Leave to Intervene in this action on February 19, 1985, seeking to assert their right of subrogation under Michigan law "to any right of recovery which Plaintiff may otherwise have against any party, to the extent of the medical expenses which it [the Department of Social Services] has incurred." Memorandum Brief in Support of Motion for Leave to Intervene at 2; *see* M.C.L. § 400.-106; M.S.A. § 16.490(16). The Department of Social Services ("DSS") claimed to have expended, as of December 13, 1984, the sum of $35,208.02 for medical expenses incurred by B.J. Williamson, III. It also apparently sought to recover the sum of $10,638.32 on behalf of the Crippled Children Fund, representing expenses the Fund had incurred in providing for the infant's medical care.

Plaintiff requested that the Court condition the intervenors' right to intervene in this litigation on their willingness to accept a reduction in their reimbursement "to reflect a proportionate share of the legal fees and expenses [plaintiff] incurred in prosecuting this action." Plaintiff's Brief in Response to Motion to Intervene at 7. The Court granted the intervenors' motion on May 7, 1985, declining to rule on the question of attorneys' fees at that time. The intervenors subsequently filed a complaint seeking reimbursement from defendants for the sum of $34,208.02 expended "for hospitalization, pharmaceutical services, physician services, nursing services and other medical services under the medical assistance (Medicaid) program, on behalf of ... Bobbie J. Williamson." Complaint of

Intervenors ¶ 3. They also sought reimbursement for the sum of $10,638.32 expended by the Crippled Children's Fund. *Id.* For their substantive allegations against defendants, the intervenors adopted and incorporated by reference the substantive allegations of plaintiff's complaint and first amended complaint.

The case eventually went to mediation. The Mediation Panel awarded $30,000 to the intervenors, which they and the defendants accepted. Plaintiff rejected her mediation award of $250,000, but eventually agreed to a settlement of $300,000 with defendants. As part of the settlement agreement, plaintiff agreed to indemnify defendants against any claim of the intervenors, meaning that $30,000 of the settlement reflected the intervenors' mediation award. Plaintiff seeks, however, to recover a proportionate share of her costs and attorneys' fees from the intervenors' share of the settlement, arguing that the intervenors' recovery was due primarily, if not solely, to the efforts of her attorneys. Magistrate Rowland found, after hearing oral argument via a telephone conference call, that "plaintiff should recover $10,-000.00 from the intervening plaintiff for contribution for costs and attorney fees incurred for preparation and presentation of this cause." Order of December 10, 1985. The intervenors subsequently filed a timely motion for reconsideration by this Court of the Magistrate's Order. Plaintiff and defendants stipulated to dismissal of the action as between them pursuant to their settlement agreement, and the Court entered an order to that effect on February 19, 1986.

### Standard of Review

Title 28, section 636(b)(1)(A) of the United States Code provides as follows:

(A) [A] judge may designate a magistrate to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action. A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate's order is clearly erroneous or contrary to law.

28 U.S.C. § 636(b)(1)(A). The Court thus must determine whether the Magistrate's Order of December 10, 1985, is "clearly erroneous or contrary to law."

### Analysis

The Court notes initially that neither plaintiff nor the intervenors disputes Magistrate Rowland's determination that $10,-000 is an appropriate amount for the intervenors to contribute toward plaintiff's attorneys' fees and expenses, provided there is a basis for such an award. I thus will decide only whether the Magistrate properly ordered the intervenors to contribute a portion of their award as their share of the attorneys' fees and expenses plaintiff incurred.

Section 400.106 of the Michigan Compiled Laws Annotated provides the statutory authority for the DSS's intervention in this action. This section states in pertinent part as follows:

(ii) ... The state department [of Social Services] shall be subrogated to any right of recover (sic) which a patient may have for the cost of hospitalization, pharmaceutical services, physician services, nursing services, and other medical services not to exceed the amount of funds expended by the department for the care and treatment of the patient. The patient or other person acting in the patient's behalf shall execute and deliver an assignment of claim or other authorizations as necessary to secure the right of recovery to the department.... If a payment is made, the state department to enforce its subrogation right, may do either of the following: (a) intervene or join in an action or proceeding brought

by the injured, diseased, or disabled person, the person's guardian, personal representative, estate, dependent, or survivors, against the third person who may be liable for the injury, disease, or disability, or against contractors, public or private, who may be liable to pay or provide medical care and services rendered to an injured, diseased, or disabled patient: (b) institute and prosecute a legal proceeding against a third person who may be liable for the injury, disease, or disability, or against contractors, public or private, who may be liable to pay or provide medical care and services rendered to an injured, diseased, or disabled patient, in state or federal court either alone or in conjunction with the injured, diseased, or disabled person, the person's guardian, personal representative, estate, dependents, or survivors. The state department may institute the proceedings in its own name or in the name of the injured, diseased, or disabled person, personal representative, estate, dependents, or survivors.... The injured, diseased, or disabled person may proceed in his or her own name, collecting the costs without the necessity of joining the state department or the state as a named party. The injured, diseased, or disabled person shall notify the state department of the action or proceeding entered into upon commencement of the action or proceeding. An action taken by the state or the state department in connection with the right of recovery afforded by this section shall not operate to deny the injured, diseased, or disabled person any part of the recovery beyond the costs expended on the person's behalf by the state department. The costs of legal action initiated by the state shall be paid by the state.

M.C.L.A. § 400.106(1)(b)(ii). The intervenors argue vigorously that since they intervened in this proceeding to protect their interests in accordance with this section, have a right of subrogation with regard to plaintiff's recovery of medical expenses to the extent that such expenses were incurred by the DSS, and did not request plaintiff's attorneys to act in their behalf, they have no obligation to pay a proportionate share of plaintiff's attorneys' fees and expenses. They note that plaintiff's attorneys admitted in November of 1984, in a letter to the DSS, that they have no authority " 'to seek attorney fees with respect to the recovery of ... expenditures paid by the Medicaid program.' " Intervenors' Memorandum at 5. Intervenors argue that their intervention in the matter clearly was proper and necessary since plaintiff otherwise would have recovered for the medical expenses the DSS had incurred. They also reject plaintiff's reliance on the "common fund" theory, arguing that "Plaintiff's position is bsed (sic) on the erroneous assumption that medical expense benefits repayable to the state is a 'fund' ", that the DSS' recovery of the medical expenses it incurred did not create a fund "in which the Plasintiffs (sic) had a right to participate", and that the common fund cases on which plaintiff relies are inapplicable in this context. *Id.* at 7–14. Intervenors note in particular that plaintiff had no right to recover the medical expenses the DSS had incurred, and that there thus is no basis for awarding her attorneys their fees and expenses for the recovery of such monies.

Plaintiff argues with equal vigor that the common fund theory justifies requiring the state to pay part of her attorneys' fees and expenses. She notes that under "Michigan law, where a plaintiff, as a result of successful litigation, creates a fund from which others are entitled to benefit, the court in which that litigation is brought may make an equitable award for payment of legal fees and expenses from that fund." Plaintiff's Memorandum at 4; *see In re Attorney Fees of Kelman, Loria, Downing, Schneider & Simpson,* 406 Mich. 497, 504, 280 N.W.2d 457, 460 (1979). Plaintiff argues that the same rule should apply in cases "where a plaintiff succeeds in creating a fund for the benefit of both himself and a subrogee." Plaintiff's Memorandum at 5; *see Abston v. Aetna Casualty & Surety Co.,* 131 Mich.App. 26, 346 N.W.2d 63 (1983). She states that it would be

unjust to allow the State "to enjoy a free lunch at the expense of indigent plaintiffs and their attorneys" and concludes that logic, fairness, and justice dictate that the Court reject the intervenors' position.

The Court's role, of course, since Michigan law controls in this diversity case, is to attempt to divine how a Michigan court would rule if faced with this situation. Although there is no directly controlling precedent, and both plaintiff and the intervenors have cited and discussed precedent strongly favorable to their respective positions, I believe that a Michigan court would take the position adopted by Magistrate Rowland and therefore will decline to reverse the Magistrate's Order.

The Michigan Supreme Court has adopted the common fund doctrine with regard to payment of attorneys' fees and expenses. As that court noted in *In re Kelman:*

> "While the general American rule is that attorneys' fees are not ordinarily recoverable as costs, both the courts and Congress have developed exceptions to this rule for situations in which overriding considerations indicate the need for such a recovery. A primary judge-created exception has been to award expenses where a plaintiff has successfully maintained a suit, usually on behalf of a class, that benefits a group of others in the same manner as himself. [Citation omitted]. To allow the others to obtain full benefit from the plaintiff's efforts without contributing equally to the litigation expenses would be to enrich the others unjustly at the plaintiff's expense." ... The exception is available when a fund is created, preserved or protected.

*In re Kelman,* 406 Mich. at 503–04, 280 N.W.2d 457, *quoting Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 391–92, 90 S.Ct. 616, 625, 24 L.Ed.2d 375 (1970). The Michigan court of appeals has noted, however, that the right to payment of attorneys' fees from a common fund generally does not arise absent indicia of an attorney-client relationship between the attorney

and the benefitted parties. *Boyce v. Grand Rapids Asphalt Paving Co.,* 117 Mich.App. 546, 549, 324 N.W.2d 28 (1982) ("Where one of several persons, all of whom are equally interested in the results of a suit, employs an attorney to conduct the case for him and the benefit of the attorney's services from the nature of the case extends to all interested parties, the other parties do not, merely by accepting the benefits of the attorney's services without objection, become liable for the attorney's fees").

Two court of appeals decisions provide the Court with guidance in resolving the issue of whether the common fund doctrine applies in this case. In *Abston v. Aetna Casualty & Surety Co.,* the court of appeals, in a case similar to this, declined to order the DSS to pay part of the plaintiff's attorney fees and expenses under the common fund doctrine. It noted that the doctrine "has been applied where a common fund is created by a subrogor, to the subrogee's benefit", *Abston,* 131 Mich.App. at 31, 346 N.W.2d 63, *citing Foremost Life Insurance Co. v. Waters,* 125 Mich.App. 799, 337 N.W.2d 29 (1983), and that the DSS does act as a subrogee under section 400.106. It found, however, that the DSS had intervened to protect its own interests in the case and had informed plaintiff's attorney "in no uncertain terms that his assistance was not required", rendering the attorney a mere "volunteer" on behalf of the State. *Abston,* 131 Mich.App. at 32, 346 N.W.2d 63. The court also indicated that the attorney's services were not even needed by the state as "the state's claim as subrogee ... [could have been] resolved by a simple application for benefits" from the insurance carrier. *Id.* at 33, 346 N.W.2d 63.

In *Waters,* the court of appeals found that attorney fees and expenses should be awarded as against a subrogee where "[b]y virtue of [a] subrogation clause ... [a] judgment entered in favor of [a plaintiff] in [a] suit against [a] tortfeasor also benefit[s]" the subrogee. *Waters,* 125 Mich. App. at 805, 337 N.W.2d 63. The subroga-

tion provision in *Waters* was found in a group insurance policy, pursuant to which the subrogee insurance company had paid certain expenses on the insured's behalf. After the insured had filed a damages action against the third-party tortfeasor, the subrogee/insurer filed its own declaratory judgment action against the defendant/insured seeking reimbursement under the subrogation clause in the event the defendant/insured was successful in her own action against the third-party tortfeasor. The defendant/insured eventually settled with the tortfeasor, and the plaintiff/insurer recovered under the subrogation provision from the defendant/insured. The court of appeals held, however, that the "defendant [was] entitled to deduct, from the sum awarded plaintiff, plaintiff's pro rata share of a reasonable fee due defendant's attorneys in the suit against the tortfeasor." *Id.* at 805–06, 337 N.W.2d 63.

The court of appeals did indicate that its decision may have been different if the plaintiff/insurer had intervened in the defendant/insured's suit against the tortfeasor. *Id.* at 805 n. 2, 337 N.W.2d 63. The intervenors have cited other authority, moreover, indicating that the common fund doctrine does not apply when a third-party intervenes, either as a subrogee or pursuant to independent authority, to recover its own expenses. *See, e.g., United States v. Nation,* 299 F.Supp. 266, 267 (N.D.Okla. 1969) (holding that the United States does not have to reimburse the injured party's attorney when it sues under its own authority to recover medical expenses it has incurred). Although I recognize the general force of these decisions, I do not believe they are applicable in this instance. The DSS merely filed a *pro forma* intervention in this case. It took little action to develop a theory or factual basis for a finding of liability against defendants, apparently being content instead to allow plaintiff's attorneys to do the work. The Court thus cannot see how the DSS can argue that its recovery of $30,000 was not due to the efforts of plaintiff's attorneys, and that it should not have to bear a proportionate share of such attorneys' fees and expenses.

Although the DSS sent plaintiff's attorneys a letter similar to the one it sent the attorney in *Abston,* indicating that their assistance was not required and that they had no authority to seek attorneys' fees from the DSS' recovery, unlike the situation in *Abston* it would be unjust in this instance to allow the DSS to be enriched as a result of the efforts of plaintiff's attorneys without having to pay for such efforts. The DSS in *Abston* did not need the efforts of plaintiff's attorney to recover its expenses; as the court of appeals indicated at the end of its decision, the DSS could have resolved its claim "by a simple application for benefits." In this case, the DSS' claim became ripe only after plaintiff's attorneys had devoted considerable time and effort to developing the case. As plaintiff argues: "For as surely as the sun sets in the west, the State would have recovered not a penny of its medical benefits had it not been for the efforts of plaintiff's counsel." Plaintiff's Memorandum at 7. My resolution of this issue may have been different if the State had taken a more active role in developing a case against defendants. The Court is not willing to hold, however, and does not believe that a Michigan court would hold, that merely filing a *pro forma* motion to intervene, and a complaint that adopts the substantive allegations of plaintiff's complaint, exempts the state and the DSS from the application of the common fund theory. *See Aetna Casualty & Surety Co. v. Starkey,* 116 Mich. App. 640, 648, 323 N.W.2d 325 (1982) (holding medical providers liable for a proportionate share of an attorney's fees and expenses where they "knew that the attorney was expending time and energy in substantiating the insurance claims which led to their payment by Aetna"; the fact that the providers had never requested the attorney's assistance was immaterial).

Subrogation is an equitable principle, even though it has a statutory foundation in this instance. If the State of Michigan and the DSS are going to stand in plaintiff's shoes for the purpose of recovering their medical expenditures, it is only eq-

uitable and fair that they be required to share in the cost of procuring such recovery. I will enter a separate order denying the intervenors' motion for reconsideration.

### JUDGMENT ORDER

In accordance with the opinion dated April 29, 1986;

IT IS HEREBY ORDERED that Intervenors' Motion for Reconsideration of the Magistrate's Order Granting Plaintiff's Motion for Contribution for Costs and Attorney Fees is DENIED:

IT IS FURTHER ORDERED, in accordance with Magistrate Doyle A. Rowland's Order of December 10, 1985, that plaintiff shall recover $10,000 from the intervening plaintiffs for contribution for costs and attorneys' fees.