Michael P. DOMINICK, William C. Cunningham, Richard W. Leake, Alan McLean, Janice Heinz, John A. Sand III, Kenneth A. Merlau, Russell G. Rothwell, Stephen E. Hovanec, and David J. Flake, Plaintiffs,

v.

Alan H. MARCOVE, Randy S. Marcove, and David R. Sixta, Defendants.

Civ. A. No. 91–B–1386.

United States District Court,
D. Colorado.

Dec. 31, 1992.

James England, Steven A. Erickson, David Packard, Hutchinson, Black, Hill & Cook, Boulder, CO, for plaintiffs.

Roger Thomasch, Donald Salcito, David B. Kelly, Ballard Spahr Andrews & Ingersoll, Denver, CO, for defendants.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Defendants move for summary judgment on plaintiffs' claim under section 14(a) of the 1934 Securities Exchange Act (15 U.S.C. § 78n(a) (1990) (the section 14(a) claim). Oral argument was heard on December 22, 1992. I will grant summary judgment on plaintiffs' section 14(a) claim. I decline to exercise supplemental jurisdiction over plaintiffs' state law claims.

The facts material to this motion are undisputed. Paul's Place, Inc. (PPI), founded in 1985, owned and operated a chain of restaurants in the Denver, Colorado metropolitan area. Plaintiffs owned 27.2% of PPI's outstanding voting shares. Defendants (or the Marcove Group) owned the remaining 72.8% of the voting shares.

By 1990 PPI had fallen on hard times. Defendants formed their own corporation, Marc2six. In 1990 Marc2six sought to purchase all of PPI's assets. In May and June of 1990, PPI issued a proxy statement seeking shareholder approval of the asset sale. PPI's board of directors drafted this proxy statement. It states that PPI's shares are valueless and that bankruptcy is PPI's only alternative to the asset sale. The proxy statement failed to disclose that PPI had negotiated a lease for a new restaurant in the Cherry Creek Shopping Center. Crucial to the resolution of this motion is the legal effect of this statement in the proxy solicitation: "[t]he Asset Purchase requires the approval of two-thirds of the Common Shares voted (excluding shares controlled by the Marcove Group)." On August 15, 1990 more than two-thirds of all the PPI shares voted approved the asset sale.

Plaintiffs allege that the proxy statement omitted a material fact by failing to disclose the existence of the restaurant lease in Cherry Creek. They contend this omission also rendered false the representation that PPI's stock was worthless. Plaintiffs allege that had they known of the Cherry Creek restaurant lease they would not have voted for the asset sale.

Plaintiffs now sue under section 14(a) and further assert state law claims for breach of fiduciary duty, fraud, and negligent misrepresentation against all defendants. I have jurisdiction over plaintiffs' section 14(a) claim. 15 U.S.C. § 78aa (1987); 28 U.S.C. § 1331 (1990). I have supplemental jurisdiction over plaintiffs' state law claims. 28 U.S.C. § 1367(a) (1990).

### I.

Summary judgment shall enter where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Summary judgment is also proper where the nonmoving party fails to make a showing sufficient to establish an essential element of its claim and on which it bears the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Also, summary judgment is appropriate where no reasonable jury could return a verdict for the claimant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The operative inquiry is whether, based on all the documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511; *Mares v. ConAgra Poultry Co., Inc.,* 971 F.2d 492, 494 (10th Cir.1992). If a movant establishes entitlement to judgment as a matter of law given uncontroverted, operative facts contained in the documentary evidence, summary judgment will lie. *Mares,* 971 F.2d at 494.

### II.

Section 14(a) and the rules and regulations promulgated thereunder make it unlawful to solicit proxies with a proxy statement containing materially misleading statements or omissions of material fact. 78 U.S.C. § 78n(a); 17 C.F.R. § 240.14a–9

(1990). To prove that a proxy misstatement caused a shareholder's damages the proxy solicitation must have been the essential causal link in accomplishing the proposed action. *Mills v. Electric Auto–Lite Co.*, 396 U.S. 375, 385, 90 S.Ct. 616, 622, 24 L.Ed.2d 593 (1970); *Virginia Bankshares, Inc. v. Sandberg*, —— U.S. ——, ——, 111 S.Ct. 2749, 2762, 115 L.Ed.2d 929 (1991). However, this essential link cannot be proven where, as here, approval by the minority shares is not legally required to authorize the transaction. *See Virginia Bankshares*, —— U.S. at ——, 111 S.Ct. at 2763. In *Virginia Bankshares* the minority shareholders sought to block a merger but did not have enough votes to do so. Accordingly, approval by the minority shares was not legally required to effectuate the transaction. *Virginia Bankshares* —— U.S. at ——, 111 S.Ct. at 2763. The transaction would have occurred even if the minority shareholders had known the truth and voted against the transaction. As approval by the minority shares was not legally required, the proxy solicitation was not an essential link in bringing about the proposed transaction. *See Virginia Bankshares*, —— U.S. at ——, 111 S.Ct. at 2763.

Defendants contend that *Virginia Bankshares* is dispositive. Plaintiffs own only 27.2% of PPI's voting shares. Thus, defendants argue that plaintiffs' votes were not legally required to authorize the asset sale. Consequently, defendants assert that the proxy solicitation was not an essential link in causing the asset sale because it would have occurred even had plaintiffs known the truth and voted against it.

■ Plaintiffs respond that their votes were necessary for approval of the asset sale because PPI's board of directors placed a condition on the asset sale which required approval by two-thirds of the non-Marcove Group shares. This condition deviates from Colorado law which requires approval by two-thirds of *all* shares entitled to vote on the asset sale. § 7–5–112(2)(c) (1986 Repl.Vol. 3A) (emphasis added) (section 112(2)(c)). On the undisputed facts of this case, this condition is without legal effect.

The Colorado Corporation Code (§§ 7–1–101 through 7–10–113, C.R.S. (1986 Repl. Vol. 3A)) sets forth specific procedures that a corporation must follow when changing the two-thirds approval requirement set forth in section 112(2)(c). Section 112(2) provides in pertinent part that:

A sale, lease, exchange, or other disposition of all or substantially all of the property and assets of a corporation, with or without its goodwill, if not in the usual and regular course of its business, may be made upon such terms and conditions and for such consideration, which may consist in whole or in part of cash or other property, including shares, obligations, or other securities of any other corporation, domestic or foreign, as may be authorized in the following manner:

(a) The board of directors shall adopt a resolution setting forth a proposal for the sale, lease, exchange, or other disposition and directing that the proposal be submitted to a vote at a meeting of shareholders, which may be either an annual or special meeting. *The board may impose conditions on shareholder approval of such proposal.*

.      .      .      .      .

(c) At such meeting the shareholders may authorize the sale, lease, exchange, or other disposition and may fix, or authorize the board of directors to fix, any or all of the terms and conditions thereof and the consideration to be received by the corporation therefor. Such authorization shall require the affirmative vote of two-thirds of the shares of the corporation entitled to vote thereon, unless any class of shares is entitled to vote thereon as a class, in which event the authorization shall require the affirmative vote of the holders of two-thirds of the shares of each class of shares entitled to vote as a class thereon and of the total shares entitled to vote thereon; *but the two-thirds voting requirement specified in this paragraph (c) may be increased or reduced (but no less than a majority) by a provision contained in the articles of incorporation in accordance with section 7-4-118.*

§ 7–5–112(2)(a) and (c), C.R.S. (emphases added). Section 112(2)(c), thus, requires amendment of the articles of incorporation to change the statutory two-thirds approval requirement.

Plaintiffs contend that although the articles of incorporation do not require two-thirds approval by the non-Marcove Group shares, their votes were nevertheless legally required because under section 112(2)(a) the board may impose conditions on shareholder approval of a sale without changing the articles of incorporation. They argue that PPI's board of directors imposed such a condition when, in the proxy statement, it stated that "[t]he Asset Purchase requires the approval of two-thirds of the Common Shares voted (excluding shares controlled by the Marcove Group)". Plaintiffs also rely on a resolution the board allegedly passed adopting this condition. Because no discovery has been conducted in this case plaintiffs have not attached a copy of the resolution.

Even assuming such a resolution exists, as a matter of law, neither it nor the proxy statement had the legal effect of requiring two-thirds approval by the non-Marcove Group shares. Although section 112(2)(a) provides that the board of directors can impose conditions on shareholder approval of an asset sale, this provision does not override section 112(2)(c)'s specific requirements. Section 112(2)(c) specifically states that the two-thirds approval requirement can be changed by a provision contained in the articles of incorporation. § 7–5–112(2)(c), C.R.S. If the articles of incorporation change the approval requirements established by section 112(2)(c) the articles of incorporation shall control. § 7–4–118, C.R.S. (1986 Repl.Vol. 3A).

■ The specific provisions of section 112(2)(c) control over the broader provision of section 112(2)(a). Under section 112(2)(a) the board can unilaterally impose conditions on shareholder approval of an asset sale. However, section 112(2)(c) clearly and unambiguously excepts from those conditions the requirement that two-thirds of all shares eligible to vote on the sale approve it. If section 112(2)(a) could

override section 112(2)(c) then section 112(2)(c) would be meaningless. Accordingly, I hold that to be legally effective a change in section 112(2)(c)'s two-thirds approval requirement must be effected through a corporation's articles of incorporation.

■ It is undisputed that PPI's articles of incorporation contain nothing requiring approval of an asset sale by a vote of more than two-thirds of the shares entitled to vote, or for that matter, by less than two-thirds but no less than a majority. Consequently, approval by only two-thirds of *all* the shares eligible to vote on the asset sale was legally required for authorization of the asset sale. The objecting shareholders did not have votes sufficient to affect the outcome. Thus, their votes were not required by law. *See Virginia Bankshares,* — U.S. at ——, 111 S.Ct. at 2763. As plaintiffs' votes were not required by law the proxy solicitation was not an essential link in bringing about the asset sale. *Virginia Bankshares,* — U.S. at ——, 111 S.Ct. at 2763. Absent proof that the proxy solicitation was an essential link in causing the sale, summary judgment is appropriate on plaintiffs' section 14(a) claim. *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

### III.

I may decline to exercise supplemental jurisdiction over plaintiffs' state law claims if plaintiffs' federal claim has been dismissed. 28 U.S.C. § 1367(c)(3) (1990). Because I dismissed plaintiffs' only federal claim I decline to exercise supplemental jurisdiction over plaintiffs' state law claims. Thus, plaintiffs' state law claims are dismissed without prejudice.

Accordingly IT IS ORDERED that

(1) defendants' motion for summary judgment is granted and plaintiffs' section 14(a) claim (first claim) is dismissed with prejudice;

(2) plaintiffs claims for breach of fiduciary duty (second claim), fraud (third claim), and negligent misrepresentation (fourth claim) are dismissed without prejudice;

(3) plaintiffs shall pay defendants' costs as a part of the judgment; and

(4) the clerk shall enter judgment accordingly.